# Exhibit A

## CONTINGENT WORKFORCE SUPPLY AGREEMENT

This Contingent Workforce Supply Agreement is entered as of _1 / 7 / 14_ between **Del Monte Fresh Production, Inc.,** a Florida corporation, whose principal address is 241 Sevilla Avenue, Penthouse, Coral Gables, Florida 33134 ("Del Monte"), and **TS Staffing Services Inc., d/b/a Corporate Resource Services, Inc.,** a Delaware corporation, with offices located at 160 Broadway, 13th Floor, New York, NY 10038 ("Service Provider").

WHEREAS, Del Monte is engaged in the production and distribution of fresh produce and requires the services of field workers to assist in the growing of such fresh produce (the "Business");

WHEREAS, the Service Provider is engaged in the business of providing and supervising qualified and competent contingent workers ("workers") and supervisors ("Supervisors") to companies such as the Del Monte who are engaged in the Business;

WHEREAS, the Del Monte has agreed to retain the Service Provider, on a non-exclusive basis, to provide, from time to time, workers, Supervisors, and the other services described below at the locations listed on Exhibit A;

WHEREAS, the parties agree that any prior agreements, whether written or oral, regarding any services provided by Service Provider to Del Monte at the above-mentioned location are hereby terminated, and this Agreement shall govern the parties relationship with respect to the Services provided herein at such location going forward.

IN CONSIDERATION of the mutual covenants and promises set forth below, and other good and valuable consideration, the Service Provider and Del Monte have agreed as follows:

I.     **Term.**   The term of this Agreement shall commence on December 12, 2013 (the "Commencement Date"), and shall continue in full force for five (5) years from the Commencement Date, unless terminated by Del Monte in accordance with Section VIII of this Agreement. This Agreement may be renewed for successive one-year periods upon the mutual written agreement of the parties hereto.

II.    **Relationship of Parties**

a.     **Sole Employer**:  The Service Provider is and shall be the sole employer of all workers and Supervisors, and with respect to such personnel, Service Provider shall perform all of the duties and responsibilities of that role under the provisions of all applicable federal and state laws and regulations.

b.     **Independent Contractor**:   Nothing contained in this Agreement shall be interpreted or construed to mean that the parties are a joint venture, partnership, co-owners, and agents of one another or otherwise participants in a joint or common undertaking. Service Provider acknowledges and agrees that (i) the Services shall be provided solely as an independent contractor and not as an agent, employee, or subcontractor of Del Monte; and (ii) it has no right, power or authority, express or implied, to assume or create any obligations, responsibility or liability on behalf of Del Monte, directly or indirectly, or to bind Del Monte in any manner whatsoever. Any and all contracts, agreements or business relationships entered into by Service Provider shall be for Service Provider's sole account and shall not bind Del Monte in any respect. Del Monte shall not be responsible for paying any of Service Provider's expenses or costs for conducting its business, including, but not limited to, wages, benefits, incentives, claims of any nature, taxes, or any other expenses and costs incurred by Service Provider.

### III.   Services.

A.   **Authority, Supervision, and Qualifications.**   The Service Provider agrees to provide, and hereby warrants and represents to Del Monte that all workers that it provides:

1)   are qualified, competent and capable of (a) laying plastic; (b) staking; (c) pruning; (d) tying; (e) planting; (f) tomato picking; (g) hauling; and (h) such other activities and duties performed in the operation of the Business in accordance with Del Monte's instructions, standards and specifications.

2)   have received the proper safety and security training as set forth in the attached Exhibit B, incorporated herein by reference;

3)   are, and shall at all times, be eligible to seek and accept employment in the United States under all applicable federal, state and local laws, rules and regulations and have the appropriate legal status to work (e.g., complete I-9 process).

4)   are, and shall at all times be, employees of the Service Provider and be under the sole and direct supervision and control of the Service Provider and its Supervisor, as defined herein, or Supervisors, as the case may be as a result of number of workers providing services in the Farm;

5)   are provided written notice that they are employees of the Service Provider, not of Del Monte.  Such written notice shall instruct each Worker that all issues relating to payroll, employee benefits, or other employee matters shall be directed to the Service Provider's On-Site Administrator/Human Resources Officer (the "On-Site Administrator").  At all times during the term of this Agreement, the Service Provider shall have its On-Site Administrator at the Farm to manage the administrative tasks set out herein.  The On-Site Administrator shall be present during normal business hours at the Farm and shall remain on call at all times in the event of emergencies or other extenuating circumstances. **Service Provider shall compel its workers to directly communicate with the On-site Administrator regarding any and all employment matters except as otherwise set forth in this Agreement;**

6)   shall be compensated by the Service Provider who shall be solely responsible for all salaries, benefits, incentives, payroll taxes, withholding taxes, workers compensation, health insurance or any other compensation or benefits and that the workers shall not be entitled to participate in any employee benefit plan or practice that is provided to Del Monte employees;

7)   shall observe standards of good and professional workmanlike conduct and keep their work areas in a neat and clean condition and as may be required by applicable federal, state and local laws, rules and regulations;

8)   have agreed to comply with Del Monte's rules and policies regarding security, general safety, confidentiality, premises access, and food safety requirements (as set forth in Exhibit B, attached hereto and incorporated herein by reference); *(ii)* treatment of confidential information, intellectual property, data, programs, furnished assets and equipment; and *(iii)* prompt return of information and property; and,

9)   have passed screening requirements as Service Provider deems reasonably necessary to determine the qualifications and suitability of the workers prior to their assignment

(collectively, the "Services").

**B.** **Inspection & Limited Oversight.** The Service Provider agrees that Del Monte shall have the right to have an inspector (the "Del Monte Representative") present at all times to observe all of the Services and to ensure that the Del Monte's requirements are met. At a minimum, Service Provider shall provide at least one full-time Supervisor for its workers to comply with applicable laws and regulations, as well as to direct and manage the workers' activities. The Supervisor's duties shall include, but not be limited to, selection of assignments of the workers within the Del Monte Farm, controlling and monitoring the day-to-day work activities of the workers, documenting compliance under this Agreement, and performing all personnel functions with respect to the workers. At no time shall Del Monte provide direction to or supervision of the workers; the Del Monte Representative shall only provide direction to Supervisor or Supervisors.

**C.** **Labor Relations.** The Service Provider will have sole control and responsibility for administering labor relations matters involving its employees. The Service Provider shall, defend, indemnify and hold Del Monte harmless from any expense loss, damage, claim, or liability whatsoever arising out of, or relating to, any unfair labor practice, employment practice or wrongful termination concerning the Service Providers employees except to the extent that any such claims, demands, liabilities, loss, damage, costs or expenses are caused by the fraud, negligence, or willful misconduct of Del Monte or its employees, directors, officers, agents, or representatives. The Service Provider shall have sole control over, and responsibility for, any labor negotiations, grievances, and arbitration concerning workers furnished to Del Monte under this Agreement.

**D.** **Retention of Workers.** The Service Provider shall be solely responsible for the recruitment, hiring, discharge, discipline, transportation, assignment or re-assignment of the workers. The Service Provider shall not, unless otherwise required by law, assign to Del Monte any worker: (i) who Service Provider knows has been convicted of a criminal offense that would have a direct bearing on the worker's suitability for the performance of the Services under this Agreement; or (ii) who Service Provider knows said worker's employment would involve an unreasonable risk to Del Monte's property, or the safety of other workers, Del Monte employees or the general public. Notwithstanding the foregoing, Del Monte shall have the option, in its sole discretion, to reject (or request a re-assignment from Del Monte Farm) any worker assigned to Del Monte.

**E.** **Payment of Wages. Time Keeping.** (i) Service Provider shall, at all times, have the sole responsibility of timely paying all wages, benefits, incentives, worker's compensation claims, unemployment claims, payroll taxes and any, and all, other costs and expenses relating to each worker, as well as complying with all applicable federal, state and local laws, rules and regulations therein (including but not limited to the Migrant and Seasonal Workers Protection Act, and the H-2A Seasonal Worker Program (if applicable)). The Service Provider agrees to timely pay its employees and acknowledges that a failure to make such payment to its employees shall severely impact Del Monte's ability to conduct its business. In the event Service Provider fails to timely pay the workers and/or any applicable government authorities for any reason whatsoever, Del Monte shall have the right to terminate this Agreement immediately, without notice or liability, and be entitled to any other remedies which it may

have by law or under this Agreement. Del Monte shall also be entitled to set-off such amounts against outstanding monies due to Service Provider under this Agreement. Such actions by Del Monte shall not constitute a waiver of any of the rights it may have against Service Provider in contract, law or equity, nor shall it relieve or extinguish Service Provider's obligations under this Agreement and/or applicable federal, state or local law. Service Provider shall defend, indemnify and hold Del Monte harmless from any expense, loss, damage, claim, or liability whatsoever arising out of or relating to Service Provider's failure to pay any wages, payroll taxes, benefits, incentives, worker's compensation claims, unemployment claims, or any other costs and expenses relating to each worker. (ii) Service Provider shall ensure that each worker properly, accurately and timely records the hours worked hereunder on an authorized and legitimate timecard. Service Provider shall establish an efficient process to track and record invoice issues and disputes, and shall be solely responsible for the reconciliation and settling of any discrepancies with respect to time-keeping matters. Service Provider shall also be solely responsible for maintaining and keeping current all worker personnel and payroll records. Service Provider shall maintain and keep current complete and accurate records detailing, at a minimum, name of the workers, the basis upon which wages are paid, the number of hours worked, total pay period earnings, amounts withheld, net pay earned, written itemized statements with the workers tax identification number, signed and completed Form WH-501 (as applicable), payroll registers, and proof of deposits to the applicable government authorities.

F. **Compliance with Applicable Law.** Each party represents and warrants it shall comply with all the applicable federal, state, county, city, or other local statutes, ordinances, rules and regulations, including but not limited to the Migrant and Seasonal Agricultural Worker Protection Act, 29 USC §1801, et. seq., Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. 136 et. seq.) (including the Federal Worker Protection Standard for Agricultural Pesticides 40 C.F.R. 170 et.seq.), the Immigration and Reform Control of 1986, Title VII of the Civil Rights Act of 1964, and the Fair Labor Standards Act. Service Provider further represents and warrants that it is an equal opportunity employer and does not unlawfully discriminate on the basis of any status or condition protected by applicable federal, state or local laws. Service Provider shall comply, and maintain policies requiring and promoting compliance, with all applicable federal, state, county, city or local employment laws, including but not limited to all such laws relating to discrimination (based on any legally protected class), harassment (sexual or any other type of harassment), or retaliation for complaints made regarding such laws. Service Provider shall prohibit and have zero tolerance for violation of such laws, policies and practices. Service Provider shall post notices informing workers of their rights in visible locations frequented by employees at the Farms. The notices shall be posted in English, Spanish, and/or such other dominant language reasonably determined to be necessary for effective communication with the workforce. Service Provider agrees to timely respond to, as well as address any and all applicable federal, state, county, city or other local fines, penalties, requests for information, audits, inspections or other related matters pertaining to the Services and Service Provider's obligations under this Agreement. Service Provider agrees to provide Del Monte with periodic status updates regarding any and all matters pertaining to Service Provider's compliance with this Section. Service Provider acknowledges and agrees that it shall provide all industry specific training. Service Provider shall promptly notify Del Monte of the existence of any condition at the Farm that has any potential of creating a safety hazard for its workers.

G. **Right to Inspect Records/Certification.** Del Monte may, at its expense, upon reasonable prior written notice to Service Provider audit Service Provider to verify compliance with the terms of this Agreement. Del Monte shall endeavor not to unreasonably interfere with the conduct of Service Provider's business. Furthermore, Service Provider shall provide written certification of its compliance with the terms of this Agreement upon request of Del Monte.

H. **Authority.** Service Provider represents and warrants that it has the right to perform the Services without violation or breach of any third party obligations or agreements.

I. Service Provider agrees to provide Del Monte within 180 days after the close of each financial year of Service Provider, a letter from the Service Provider's auditor, certifying that the Service Provider's audit resulted in the Service Provider being deemed a "Going concern." In the event that, at any time during the term of this agreement, Service Provider experiences a material adverse change in its financial condition or general creditworthiness, or fails to meet any of its obligations under this Agreement, Del Monte shall have the right to request from Service Provider and Service Provider shall immediately provide either a security deposit, performance payment bond or letter of credit in an amount, as reasonably determined by Del Monte, to meet Service Provider's payment obligations under this Agreement. Del Monte shall have the right to draw upon the performance payment bond, letter of credit or security deposit in the event the Service Provider fails to meet any of its obligations under this Agreement.

IV. **Compensation.** As compensation for all of the Services provided by the Service Provider, Del Monte agrees to pay the fees set forth in the attached Exhibit A, incorporated herein by reference. The Service Provider shall, on a weekly basis, submit accurate time records to Del Monte for review, along with an invoice for payment of fee. Del Monte shall be obligated to tender payment to the Service Provider upon presentation of an invoice for the total amount due, plus any additional back-up verification requested by Del Monte. In no event shall Del Monte be obligated to pay for any hours not properly reflected on an authorized time card. Payment shall be made within ten (10) business days from the date of receipt of the invoice at Del Monte's corporate offices in Coral Gables, Florida. Each payment request to Del Monte will be deemed a certification by the Service Provider that the workers working in the Farms have been paid in full and received all required benefits for current and prior time periods of work in the Farms as required by law and that the Service Provider has otherwise complied with and obeyed all laws and legal requirements, both federal and applicable state and particularly laws relating to discrimination (based on any legally protected class), for and in connection with the work, work environment and transportation and/or housing, if any, provided to the workers and have maintained a system that allows discrimination and retaliation complaints by workers in their native language.

V. **Insurance.** The Service Provider shall procure and maintain at its expense during the term of this agreement, policies of insurance in the types and in the amounts no less than the minimum coverage specified below, with responsible insurance companies, and upon terms satisfactory to Del Monte. Certificates of insurance concerning each such policy shall be delivered to Del Monte upon execution of this agreement. Each such insurance policy shall name Del Monte, its parents, subsidiaries, and affiliates, and each of its respective officers, directors, partners, shareholders, employees, agents and servants as additional insureds (collectively the "Additional Insureds"), and said insurance policy shall be considered to be primary to any similar insurance carried by the Additional Insureds. The required types and amount of insurance are as follows:

A. Comprehensive General Liability insurance with an amount of not less than $2.0 million combined single limit and $3.0 million general aggregate;

B. Umbrella insurance policy with an amount of not less than $5.0 million;

C. Automobile Liability insurance with an amount of not less than $1.0 million combined single limit;

D. Workers' Compensation Insurance in an amount not less than $500,000 per incident or the statutory limits;

E. Employers' Liability Insurance in an amount not less than $1,000,000 per incident.

**VI.    Indemnification.** The Service Provider hereby agrees to indemnify, defend, and hold harmless Del Monte, its parents, subsidiaries and affiliates, and each of their respective officers, directors, shareholders, employees, agents, successors, assigns and representatives of and from any and all claims, demands, liability, loss, damage, costs or expenses (including reasonable attorneys' fees, costs, and expenses) arising out of or in any way connected with the Services provided hereunder, fraud, misconduct or negligence of the Service Provider or its employees, agents or designees and anyone directly or indirectly employed by the Service Provider or anyone for whose fraud, negligence, or misconduct the Service Provider may be liable, except to the extent that any such claims, demands, liabilities, loss, damage, costs or expenses are caused by the fraud, negligence, or willful misconduct of Del Monte or its employees, directors, officers, agents, or representatives.

**VII.    Damages.** In the event that the Service Provider fails to meet performance requirements or compliance standards set forth in this Agreement, the Service Provider shall pay to Del Monte for all expenses incurred by Del Monte for breach of the Service Provider's obligations under the Agreement, including, but not limited to, expenses in procuring replacement services and related expenses.

**VIII.    Termination.** The Service Provider acknowledges and agrees that Del Monte requires the highest level of quality in the provision of the Services to preserve the quality and value of its brand name. Accordingly, the Service Provider agrees that Del Monte may at any time, in the exercise of its sole discretion, terminate this agreement upon five (5) days notice to the Service Provider. Upon termination, Del Monte's sole obligation to the Service Provider shall be to pay for any Services that have not been paid through the effective date of termination. Notwithstanding the foregoing, Del Monte shall be permitted to terminate this agreement immediately upon notice to the Service Provider pursuant to Section III (E) above, or any instance of fraud or misconduct by the Service Provider or its employers. Service Provider may terminate this agreement upon ninety (90) days prior written notice to Del Monte.

**IX.    Right of Setoff.** Del Monte shall have the right of setoff against any and all amounts that may, or may become, due and payable to Service Provider (regardless of the nature of such amounts, including but not limited to unpaid wages, taxes, etc.) under this Agreement. Del Monte's right of setoff shall include, but not be limited to, (i) any and all amounts owed to Del Monte by Service Provider herein; (ii) unpaid worker wages, benefits, incentives, worker's compensation claims, unemployment claims, payroll taxes and any and all other costs and expenses relating to any worker; (iii) damages arising from any breach of representation and warranty by Service Provider herein; or (iv) any claims for indemnification. Del Monte's right hereunder shall not extinguish Service Provider obligations under any applicable law or under this Agreement.

**X.    Waiver of Jury Trial, Venue, and Attorneys' Fees and Costs.** DEL MONTE AND THE SERVICE PROVIDER AGREE THAT, IN ANY SUIT, ACTION, OR PROCEEDING BASED IN TORT, OR IN CONTRACT, BROUGHT BY ANY OF THE PARTIES HERETO IN CONNECTION WITH ANY MATTERS WHATSOEVER ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE TERMS OF THIS AGREEMENT, EACH OF THE PARTIES HERETO SHALL, AND DO HEREBY, WAIVE TRIAL BY JURY TO THE FULLEST EXTENT PERMITTED BY LAW, AND THAT THE PREVAILING PARTY IN ANY SUCH ACTION SHALL RECOVER FROM THE OTHER PARTY ALL REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES INCURRED WITH RESPECT TO ANY CLAIM, DEFENSE, OR ENFORCEMENT OF ANY OBLIGATION OF EITHER PARTY ARISING OUT OF OR RELATED TO THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO PRE-TRIAL RELIEF, DISPOSITIVE MOTIONS, TRIAL AND ALL LEVELS OF APPEAL. IN ADDITION, EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY: (A) AGREE THAT VENUE FOR ANY SUIT, ACTION, OR PROCEEDING OF ANY NATURE WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS AGREEMENT SHALL LIE EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN AND FOR MIAMI-DADE COUNTY, FLORIDA, (B) WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH THEY MAY HAVE TO THE LAYING OF VENUE IN THE ABOVE-DESCRIBED COURTS, AND (C) WAIVE ANY CLAIM, DEFENSE, OR OBJECTION THAT ANY SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY OF THE ABOVE-DESCRIBED COURTS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. FURTHER, EACH OF THE PARTIES HERETO HEREBY ACCEPTS AND IRREVOCABLY CONSENTS TO THE PERSONAL AND SUBJECT MATTER JURISDICTION OF THE STATE AND FEDERAL COURTS IN AND FOR MIAMI-DADE COUNTY, FLORIDA IN ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF, OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

**XI.    Intellectual Property.** The Service Provider shall retain all ownership rights including exclusive copyright ownership in all date reports, information, manuals, computer programs, or other written, recorded, photographic or visual materials, or other deliverables (collectively referred to as the "Intellectual Property") produced by the Service Provider in the performance of the Services. Del Monte shall retain no ownership, interest, or title in such Intellectual Property and, immediately upon termination of this Agreement, Del Monte shall return to the Service Provider any and all Intellectual Property it may have in its possession at such a time. Nothing herein shall be deemed to grant to the Service Provider or any worker or Service Provider employee, any right, title or interest of any kind in any trademark, copyright, design, imagery, trade secret or business information connected in any manner to Del Monte or its employees.

**XII.    Third Party Restrictions.** The Service Provider represents and warrants that it and its workers have the right to perform the Services without violation of any third party obligations. The Service Provider further represents and warrants that it and its workers have the right to disclose to Del Monte, all information transmitted to Del Monte in the performance of Services.

**XIII.    Miscellaneous.**

    **A.**    This Agreement, including all Statements of Work, Exhibits and Attachments attached hereto are incorporated by reference, represents the entire agreement between the parties, and supersedes and cancels any other communication, representation or advertising whether oral or written,

on the subjects herein. The parties further agree that neither of them will be bound by terms appearing elsewhere (i.e., pre-printed forms or documents, electronic terms and conditions, purchase orders, etc), nor shall such terms be incorporated into this Agreement or be construed to modify, amend, or alter the terms of this Agreement.   Del Monte explicitly rejects the applicability of any general conditions, standard terms or standard agreements of Service Provider.   Failure to require strict performance or to exercise any right or remedy contained herein will not preclude any future requirement of strict performance or the exercise of such right or remedy. Any right or remedy contained herein is cumulative to the other rights or remedies available by law. This Agreement shall bind and benefit the parties hereto and their respective legal representatives, successors and permitted assigns. Section headings are for the convenience and are not to be defining or part of the text. All terms used in any one number or gender shall include any other number or gender where applicable.

B.      The illegality or invalidity of any part of this Agreement shall not affect the legality or validity of the remainder of the Agreement or Clause, as the case may be.

C.      Service Provider agrees that it shall maintain as confidential and not disclose to any third party, except as expressly permitted by this Agreement, the terms and conditions of this Agreement, or any other Del Monte Confidential Information (defined as business and marketing plans and strategies, business know-how, non-public business and technology information, trade secrets, any written materials marked as confidential and any other information, including written, visual or oral information, which reasonably should be understood to be confidential).   Service Provider may disclose Confidential Information only to its employees, independent contractors and advisors who need to know such information, and who are bound to keep such information confidential. If Service Provider receives a formal written request to disclose this Agreement, either as part of an agency's investigation, on-going litigation or any other proceeding, Service Provider will provide notice of such request within 24 hours of receipt thereof to provide an opportunity to Del Monte to evaluate said request.   Unless otherwise required by law or an applicable and bona fide court order, Service Provider will not disclose this Agreement without approval from Del Monte. Service Provider agrees that money damages would not be a sufficient remedy for any breach of the obligations herein and that Del Monte shall be entitled to seek specific injunctive relief as a remedy for any such breach. Such remedy shall not be deemed to be the exclusive remedy for the breach of obligations herein but shall be in addition to all other available legal or equitable remedies.  This provision will survive termination of this Agreement.

D.      Service Provider represents and warrants that no officer, director, employee, or agent of Del Monte has been or will be employed, retained or paid a fee, nor has any such person received or been promised any personal compensation or consideration, by or from Service Provider or any of Service Provider's officers, directors, employees or agents in connection with the obtaining, arranging or negotiation of this Agreement or other documents entered into or executed in connection with this Agreement.

E.      This Agreement may not be amended except by an instrument in writing signed by each of the parties.

F.      Neither party to this agreement may transfer or assign this Agreement without the prior written consent of the other except that Del Monte may assign this agreement to any of its parents, subsidiaries, or affiliates without such consent.

G.      Service Provider agrees to comply with the Service Provider Code of Business Conduct set forth in the attached Exhibit C, which is incorporated by reference.

H.      Service Provider agrees to comply with the Service Provider Compliance set forth in the attached Exhibit D, which is incorporated by reference.

I.      Upon written notice to Del Monte, Service Provider may utilize business partners in satisfying its obligations under this Agreement.

**J.**     Nothing contained herein shall be construed to create an agency or joint employer relationship between the Service Provider and Del Monte. Neither party shall have the right or authority to enter into agreements on behalf of the other.

**K.**     This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without respect to conflict of laws principles.

**L.**     Service Provider shall provide Del Monte with written certification that it has conducted a self-audit and that Service Provider is in compliance with all of its obligations under this Agreement, including but not limited to, compliance with all applicable law.

**XIV.    Notice.**   Any notices required or permitted to be given under this Agreement shall be in writing and shall be delivered personally, by reliable overnight courier service, or by confirmed facsimile transmission, as follows:

Del Monte:
Louie Tenazas
Sr. Vice President-Human Resources
241 Sevilla Avenue
Coral Gables, Florida 33134
305-520-8400
305-520-8159

Service Provider:
Frank Vaccaro
President of Sales
160 Broadway
New York, NY 10038
508.393.4480
508-393-4485

**XV.    Signatures; Counterparts.**   This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile, which facsimile signature shall be deemed an original.

**DEL MONTE FRESH PRODUCTION, INC.**

Louie Tenazas
SVP, Human Resources

Date  1/8/2014

**SERVICE PROVIDER**

Frank Vaccaro
President of Sales

Date  1/7/14

## EXHIBIT A

### FEES

Pursuant to Section IV of that certain Contingent Workforce Supply Agreement (the "Agreement") entered into by and between Del Monte and the Service Provider, Del Monte shall pay Service provider as follows:

1. **Location of Services**

   a. Highway 60 Complex and Miles Farm; Mulberry, Florida

   b. Highway 62 Farm; Parrish, Florida

   c. Highway 64 Farm; Myakka City, Florida

2. **Schedule**

| Estimated Weeks | Function | Estimated Number of Workers and Tractor Drivers Needed |
|---|---|---|
| Weeks 49 to 52 (2013) | Plastic Laying | From 84 up to 92 |
| Weeks 1 to 11 (2014) | Staking Pruning Planting Tying | From 125 up to 489 |
| Weeks 12 to 14 (2014) | Tying | From 84 up to 92 |
| Weeks 15 to 24 (2014) | Tomato Picking Hauling Packing | From 1,016 up to 2,000 |

3. **Rates**

Del Monte agrees to pay the following labor costs for the specific activities as listed below. Rates will only be reviewed after Week 24 (2014).

| Activity | Requirements | Rate | Mark up | Bill Rate |
|---|---|---|---|---|
| Plastic laying | Farm laborers, as needed (estimate: 60) | $ 8.00/hr | 28.50% | $ 10.28/hr |
| | Tractor drivers, as needed (estimate: 24) | $ 9.00/hr | 28.50% | $ 11.57/hr |
| | FLC , as needed (estimate: 3) | $ 125/FLC per day | - | $ 125/FLC per day |
| | Onsite Supervisor Service Fee | $ 400/week (estimated) | - | $ 400/week (estimated) |
| | Other operational expenses* | $ 4,100 /wk | - | $ 4,100 /wk |
| Staking | FLC | $25.41/acre | - | $25.41/acre |
| | Workers | $72.60/acre | 28.50% | $93.29/acre |
| Pruning | FLC | $ 7.26/acre | - | $ 7.26/acre |
| | Workers | $ 36.30/acre | 28.50% | $46.65/acre |
| Tying (Payroll 4X) | FLC | $ 7.26/acre | - | $ 7.26/acre |
| | Workers | $3 6.30/acre | 28.50% | $ 46.65/acre |

| Planting | Farm laborers, as needed (estimate: 60) | $ 8.00/hr | 28.50% | $ 10.28/hr |
| | Tractor drivers, as needed (estimate: 24) | $ 9.00/hr | 28.50% | $ 11.57/hr |
| | FLC, as needed (estimate: 3) | $ 125/FLC per day | - | $ 125/FLC per day |
| | Onsite Supervisor Service Fee | $ 400/week (estimated) | - | $ 400/week (estimated) |
| | Other operational expenses* | $ 4,400/week | - | $ 4,400/week |
| Tractor Operations (for wks 10-24) | Tractor drivers, as needed (estimate: 24) | $ 9.00/hr | 28.50% | $ 11.57/hr |
| | Onsite Supervisor Service Fee | $ 400/week (estimated) | - | $ 400/week (estimated) |
| Picking: Round Tomatoes | FLC | $ 4.00/bin | - | $ 4.00/bin |
| | Workers | $ 24.00/bin | 28.50% | $ 30.84/bin |
| Picking: Roma Tomatoes | FLC | $ 4.50/bin | - | $ 4.50/bin |
| | Workers | $ 26.50/bin | 28.50% | $ 34.05/bin |
| Picking: Grape Tomatoes | FLC | $ 10.00/bin | - | $ 10.00/bin |
| | Workers | $ 82.00/bin | 28.50% | $ 105.37/bin |
| Picking: Cherry Tomatoes | FLC | $ 10.00/bin | - | $ 10.00/bin |
| | Workers | $ 51.93/bin | 28.50% | $ 66.73/bin |
| Packing | TBD | TBD | TBD | TBD |

| Hauling Rate** | Estimated total bins | Estimated Total Acres | Requirement | Haul Rate per truck for Full load (for 44 full size bins or more) |
|---|---|---|---|---|
| Hwy 64 | 33,460 | 478 | FLC | $160/day |
| | | | Driver plus truck | $77.10/delivery |
| Hwy 62 | 44,660 | 638 | FLC | $140/day |
| | | | Driver plus truck | $77.10/delivery |

** *Notes*:

- There must be 44 full size bins per truck and each truck must weigh 78,000 lbs minimum.
- Each truck will be weighed. For each truck arriving less than the 78,000 lbs, the total daily hauling cost will be deducted $ 50.00 per incident.
- Haul rates are all-inclusive of drivers, wages, fuel, insurance and any other related expenses.

4. **Services to be Furnished**

   a. For the agreed rate, Service Provider will:

      1. Provide manual labor to complete the scope of work. This includes farm laborers and tractor drivers.

      2. Transport workers to and from the worksite. This includes provision of bus, fuel and drivers. Service Provider shall: *(i)* comply with all applicable legal requirements for transportation, including but not limited to those under the Migrant and Seasonal Workers Protection Act and the H-2A Seasonal Worker Program (if applicable); *(ii)* ensure that each driver meets or exceeds applicable legal requirements; *(iii)* provide all notices required to be provided to its workers by applicable law; and *(iv)* ensure that proper endorsements to licenses for provision of transportation are maintained. Service Provider shall provide a valid copy of insurance coverage for licensed drivers and transportation equipment to Del Monte upon execution of this Agreement.

      3. Copies of Insurance coverage for licensed drivers and transportation equipment must be provided to Del Monte for documentation purposes.

4. Compliance costs include drinking water, mobile toilets, posters, hand washing stations and all other farm safety requirements.

5. The agreed rates are also inclusive of overtime charges, if there are any.

5. **Supervisory Persons**

    a. Service Provider shall provide one (1) supervisory person, at its expense, to direct and oversee the Services to be provided herein. The Supervisor, who is responsible for the supervision of the crew, foremen and workers, shall be available at all times to report to and confer with designated employees of Del Monte.

    b. The Supervisor must hold a current, valid United States Department of Labor ("DOL") Farm Contractor License to provide the Services, as well as any other license that may be required by another governmental agency, including hereunder, the transportation and housing of workers, as applicable. Service Provider shall provide a valid copy of Supervisor's license to Del Monte upon execution of this Agreement.

6. **Ancillary Support**

    a. Service Provider shall provide whatever ancillary support equipment, supplies, transportation and facilities are required for its workers to adequately and properly perform their respective tasks, and as is customary in the industry. Such equipment, supplies and facilities shall include, but not be limited to, off-site housing, water and ice, food and lavatories (to be serviced at least twice per week), and any other materials and equipment necessary to perform the Service.

    b. Rates for ancillary services, not to exceed $4,400 a week, (including, but not limited to, farming equipment, transportation of workers to and from farm locations and all federal, statutory compliance requirements including provision of drinking water, portable toilets and hand washing stations) may vary due to the number of headcount. Farm Manager Authorization and Director of Farming Approval are required weekly.

7. **Protective Equipment**

    a. Service Provider shall provide personal protective equipment ("PPE"), at its expense, for the workers to effectively perform their duties each day while on DMFP's owned, leased, or controlled premises. PPE includes, but is not limited to, safety equipment used to protect the head, eyes and face, hand and arm, foot and leg, and body (torso). PPE must be adequate for the Farm's hazards and maintained in a clean and reliable condition.

## EXHIBIT B

## DEL MONTE FOOD SAFETY REQUIREMENTS 2013

**Contractor Food Safety Requirements and Consequences**

Food safety is of utmost importance to our company. Our food safety program complies with all regulatory requirements applicable to our operations. Pursuant to Section III (A)(b) of that certain Contingent Workforce Supply Agreement (the "Agreement") entered into by and between Del Monte and the Service Provide, the Service Provider shall provide proper food safety policies, guidelines, protocols, standard operating procedures ("SOPs"), and training programs to its workers including, but not limited to:

- Tomato Good Agricultural Practices (T-GAP)
- Tomato Good Manufacturing Practices (T-BMP)
- Policy Prohibiting Harvest of Contaminated Product
- Personal Hygiene and Welfare Policy
- Hand-washing and Sanitation SOP
- Packaging Handling Policy
- Corrective Actions Policy
- Sanitary Facilities Policy
- Foreign Objects Policy
- Food Defense Protocol
- Visitors Policy
- Packing, Labeling and Product Specifications
- Harvest Instructions
- Non-conforming Product and Product Rework
- Product Traceability
- Safe Chemical Handling
- Handling and Cleaning of Harvest Aids (gloves, containers, tools, utensils, equipment, food contact surfaces).
- Media/Press Communication
- Any applicable food safety and quality assurance training requirements

Del Monte shall have the right to conduct periodic inspections of the Service Provider to verify compliance with the aforementioned food safety and quality assurance rules. The Service Provider shall ensure that each worker holds a valid and current training certificate (if applicable). The Service Provider shall provide a copy of such training certificate and a list of employees holding valid and current training cards to Del Monte upon written request. The Service Provider will also provide adequate follow-up training to its workers in pesticide handling as required by law. In the event that Del Monte determines that The Service Provider is not in compliance with the food safety and quality assurance rules, Del Monte will provide the Service Provider with a written warning identifying the failure to comply and request for corrective action within a specific time period set forth in the written warning.  If the Service Provider shall neglect, fail, or refuse to take corrective action within the time period set forth in the written notice, then the Service Provider shall pay Del Monte the sum of $500.00 per violation. Said amount is a fair and reasonable estimate and agreed on by and between the Service Provider and Del Monte because of the impracticability and extreme difficulty of fixing and ascertaining the true value of the damages which Del Monte is expected to suffer in such event and not as a penalty. Del Monte may deduct any liquidated damages due hereunder from any amounts due the Service Provider or otherwise collect the liquidated damages from the Service Provider. Such liquidated damages shall be Del Monte's sole and exclusive remedy in such event; provided, however, such liquidated damages shall not apply in other event.

Notwithstanding the foregoing, Del Monte reserves the right to terminate this Agreement and collect payment from the Service Provider commensurate with the amount of damages suffered, if Del Monte concludes, at its sole discretion, that the Service Provider has committed a material violation(s) of the food safety and quality assurance rules including but not limited to the contamination by the following: bathing, urinating, defecating, vomiting, or consciously bleeding on product, in growing area, in a water source, or in packaging area.

In addition to the food safety and quality assurance rules, the Service Provider is required to provide portable restrooms that comply with all applicable state, local and federal laws and regulations, including but not limited to OSHA requirements. In the event that the facilities are not in compliance, Del Monte shall have the right (but not the obligation) to obtain compliant facilities on behalf of the Service Provider and deduct the costs of such replacement facilities from any amounts dues to the Service Provider from Del Monte. Likewise, the Service Provider must provide a designated dining/rest area for its employee to utilize during meal and other breaks.

## EXHIBIT C

## SERVICE PROVIDER CODE OF BUSINESS CONDUCT

In connection with that certain Contingent Workforce Supply Agreement (the "Agreement") entered into by and between Del Monte and Service Provider, Service Provider agrees to comply with the following Service Provider Code of Business Conduct, which is incorporated into the Agreement hereto.

DEL MONTE FRESH PRODUCE
SERVICE PROVIDER CODE OF BUSINESS CONDUCT

This Service Provider Code of Business Conduct sets forth the business conduct standards that Del Monte Fresh Produce expects from all of its Service Providers and the Del Monte employees who interact with them. All Service Providers must maintain the highest standards of ethical conduct, as well as conduct themselves with integrity, honesty and transparency. Service Providers must also operate in strict compliance with all applicable laws, and avoid even the perception of impropriety or a conflict of interest. "Service Provider" means any business, company, corporation, person or other entity that provides, or seeks to provide, any kind of goods or services to Del Monte. By providing any kind of goods or services to Del Monte Service Provider agrees to adhere to this Code of Business Conduct.

### ETHICS AND THE LAW

Service Provider shall act in accordance with all applicable laws, regulations, rules and requirements applicable to those products and services that it provides Del Monte. Service Provider shall not offer, promise or provide any Del Monte employee a kickback, favor, cash, gratuity, entertainment or anything of value for the purpose of obtaining business or favorable treatment from Del Monte. Del Monte employees are strictly prohibited from soliciting or accepting such favors from Service Providers. This restriction extends to all family members of both Service Provider and Del Monte employees, and any other persons with whom Service Provider has or Del Monte employees have significant personal relationships. Service Provider is strictly prohibited from entering into any type of financial or any other type of relationship with any Del Monte employee that creates any actual, potential or perceived conflict of interest. Service Provider understands that corruption, extortion, embezzlement, bribes, and any other means to obtain an undue or improper advantage are strictly prohibited. Service Provider further understands that it shall not violate any applicable anti-corruption law in those countries where it does business.

### LABOR AND HUMAN RIGHTS

Service Provider must uphold the human rights of workers, and not use forced or involuntary labor, whether slaved, forced, bonded, prison, military, compulsory or indentured labor, including debt servitude. All work must be voluntary and workers shall be free to leave work or terminate their employment as permitted by and in accordance with applicable law. Child labor is strictly prohibited. Service Provider shall not threaten workers with or subject them to harsh or inhumane treatment or physically abuse. Service Provider will respect the principles of freedom of association and collective bargaining, as permitted by and in accordance with applicable law. Service Provider shall not permit unlawful discrimination or harassment of its employees. Service Provider shall pay all workers at least the minimum wage required by applicable law, provide all legally mandated benefits, and pay for overtime hours at the rate required by applicable law. Service Provider shall pay workers and the applicable government authorities in a timely manner. Service Provider shall clearly convey, in a language understood by its worker, the basis on which such workers are being paid, as well as any legally permissible conditions of employment. Under no circumstances shall work hours or work weeks exceed the maximum permitted under applicable law. Service Provider shall provide workers with a safe, clean and healthy work environment. Service Provider shall comply with all applicable environmental laws.

### REPORTING VIOLATIONS OR ETHICAL CONCERNS

Service Provider will promptly notify Del Monte regarding any known or suspected violation of this Code of Business Conduct or any other ethical concerns. If Service Provider wishes to remain anonymous it may contact the Del Monte Hotline by phone by dialing 305-520-8499 or toll-free (US only) 1-800-925-4537, fax by dialing 305-520-8496, e-mail to emphotline@freshdelmonte.com, or by mail to "Attn: Employee Hotline, Del Monte Fresh Produce, P.O. Box 149222, Coral Gables, Florida, USA, 33114". Confidentiality for persons who choose not to remain anonymous will be maintained to the fullest extent possible.

Note: Del Monte reserves the right to audit Service Provider's compliance with this Code of Business Conduct, as well as Service Provider's wage, hour, payroll, and other worker records and practices. In the event Service Provider violates or is unable to demonstrate compliance with this Code of Business Conduct, Del Monte reserves the right to immediately terminate or suspend any agreement with Service Provider or seek the appropriate legal action.

**EXHIBIT D**

**SERVICE PROVIDER COMPLIANCE**

In connection with that certain Contingent Workforce Supply Agreement (the "Agreement") entered into by and between Del Monte and Service Provider, Service Provider shall establish systematic procedures for responding promptly and effectively to any complaints pertaining to hostile environment, employee retaliation issues, harassment (sexual or any other type of harassment), or discrimination issues (due to age, race, religion, disability or any other protected category).

Service Provider shall prohibit and have zero tolerance for violation of such laws, policies and practices.

**REPORTING VIOLATIONS**

1.  During contract performance, the Service Provider shall prominently display in visible locations at the Farms frequented by the workers:

    a)  notices informing workers of their employment rights in English, Spanish, and/or such other dominant language reasonably determined to be necessary to ensure an effective communication with the workforce; and,

    b)  a designated Service Provider telephone number to report any complaints related to discrimination (based on any legally protected class), workplace harassment (sexual or any other type of harassment), hostile work environment, or retaliation for making such a complaint. Del Monte's HR Employee Hotline number shall be offered as an alternative resource for workers to file complaints regarding discrimination, harassment, or other employer or employee violations of such laws.

2.  Upon receipt of a complaint, Service Provider will undertake a prompt investigation appropriate to the circumstances.

3.  If Del Monte receives complaints of unlawful conduct as specified above by a Service Provider's employee, Del Monte will direct the complaint to the Service Provider for resolution. Likewise, if Del Monte or the Service Provider receives complaints from Service Provider's workers that such workers have been discriminated against by Del Monte employees based on legally protected classes under Title VII, such complaints shall be investigated by Del Monte.

4.  Confidentiality will be maintained throughout the investigative process to the extent practicable and consistent with the policies and procedures of the Party undertaking the full investigation.

5.  Upon completion of the investigation, Service Provider will take appropriate corrective action, if necessary and supported by the facts. Remedial action shall be determined in accordance with the Service Provider's employment policies and procedures, which shall comport with all laws applicable to the foregoing types of complaints.

6.  Service Provider shall report to Del Monte all complaints related to unlawful discrimination and/or retaliation by its workers working in the Farm and the disposition of such complaints.

7.  Service Provider shall maintain records of investigation and resolution and/or disposition of such complaints and provide such records to Del Monte upon request.

## ADDENDUM
## TO
## CONTINGENT WORKFORCE SUPPLY AGREEMENT

This is an Amendment (the "Amendment") to that certain Contingent Workforce Supply Agreement for <u>Mulberry, Parrish, and Myakka City, Florida ("Mulberry, FL")</u> entered on January 7, 2014, by and between **Del Monte Fresh Production, Inc.,** ("Del Monte") and **TS Staffing Services Inc., d/b/a Corporate Resource Services** ("Service Provider") (the "Agreement"). Unless otherwise specified, all defined terms contained in the Agreement shall have the same meaning when used herein.

Service Provider and Del Monte hereby agree that the Agreement is amended as follows:

1. The rates delineated in <u>Exhibit A</u> for staking, pruning and tying are hereby deleted and replaced with the following:

| Activity | Requirements | Rate | | Mark up | Bill Rate | |
|---|---|---|---|---|---|---|
| Staking | FLC | $ | 32.67 | 0% | $ | 32.67 |
| | Workers | $ | 105.27 | 28.50% | $ | 135.27 |
| | Total | | | | $ | **167.94** |
| Pruning | FLC | $ | 7.26 | 0% | $ | 7.26 |
| | Workers | $ | 39.93 | 28.50% | $ | 51.31 |
| | Total | | | | $ | **58.57** |
| Tying | FLC | $ | 7.26 | 0% | $ | 7.26 |
| | Workers | $ | 39.93 | 28.50% | $ | 51.31 |
| | Total | | | | $ | **58.57** |

2. These revised rates are effective immediately and retroactive to the start of staking operations.

3. All rates listed above are inclusive of, but not limited to, farming equipment, transportation of workers to and from farm locations and all federal, statutory compliance requirements including provision of drinking water, portable toilets and hand washing stations. These rates include estimated charges such as bus driver ($100/day), flat bed truck ($75/day), handy cans-portable toilets, handwashing stations, water truck ($75/day) and field trucks ($75/day).

4. All rates are inclusive of overtime charges, if there are any.

5. Except as amended hereby, all of the terms and conditions of the Agreement shall continue in full force and effect.

IN WITNESS WHEREOF, the Parties represent and warrant that this Addendum to the Contingent Workforce Supply Agreement for <u>Mulberry, FL</u> is executed by duly authorized representatives of each Party as set forth below.

TS Staffing Services Inc.

By: _____

Date: ___3-11-2014___

Del Monte Fresh Production, Inc.

By: _____
Louie Tenazas
Sr. Vice President-Human Resources

Date: ___3/11/14___

**ADDENDUM No. 2**
**TO**
**CONTINGENT WORKFORCE SUPPLY AGREEMENT**

This is an Amendment (the "Amendment") to that certain Contingent Workforce Supply Agreement for Mulberry, Parrish, and Myakka City, Florida ("Mulberry, FL") entered on January 7, 2014, by and between **Del Monte Fresh Production, Inc.,** ("Del Monte") and **TS Staffing Services Inc., d/b/a Corporate Resource Services** ("Service Provider") (the "Agreement"). Unless otherwise specified, all defined terms contained in the Agreement shall have the same meaning when used herein.

Service Provider and Del Monte hereby agree that the Agreement is amended effective March 31, 2014 as follows:

1. Section 3 of <u>Exhibit A</u> of the Agreement is amended to incorporate the following positions and rates under the specific activity listed as Packing:

| Position | Estimated Headcount[1] | Pay Rate | Mark Up | Bill Rate |
|---|---|---|---|---|
| Box Machine Operators | 24 | $9.00 | 29.50% | $11.66 |
| Box Helpers | 15 | $8.50 | 29.50% | $11.01 |
| Box Loaders | 6 | $8.00 | 29.50% | $10.36 |
| Stackers | 36 | $8.50 | 29.50% | $11.01 |
| Palletizer Operator | 2 | $8.50 | 29.50% | $11.01 |
| Box Feeder | 48 | $8.50 | 29.50% | $11.01 |
| Grader | 331 | $8.50 | 29.50% | $11.01 |
| Fillers Operator | 34 | $9.00 | 29.50% | $11.66 |
| Forklift Operator | 39 | $9.50 | 29.50% | $12.30 |
| Grader Foreman | 4 | $9.00 | 29.50% | $11.66 |
| Pallet Tag Maker | 6 | $8.50 | 29.50% | $11.01 |
| QA | 4 | $9.00 | 29.50% | $11.66 |
| Sanitation | 10 | $8.50 | 29.50% | $11.01 |

[1] *Headcount Requirement at peak production*

2. All rates are inclusive of overtime charges, if there are any.

3. All rates listed above are inclusive of, but not limited to, all necessary personal protective equipment for the workers to effectively perform their duties, and proper safety and security training for each of the production workers such as HACCP, Occupational Safety, GMP Basics, Smart Sanitation and others.

4. Except as amended hereby, all of the terms and conditions of the Agreement shall continue in full force and effect.

IN WITNESS WHEREOF, the Parties represent and warrant that this Addendum to the Contingent Workforce Supply Agreement for Mulberry, FL is executed by duly authorized representatives of each Party as set forth below.

ADDENDUM No. 2 / CWSA Mulberry, FL
March 26, 2014
Page 2

**TS Staffing Services Inc.**

By: _____

Date: __4/4/14_____

**Del Monte Fresh Production, Inc.**

By: ___Paul g Rice_____
        Paul Rice
        Sr. Vice President-N.A. Operations

Date: ___3/28/14_____

By: _____
        Louie Tenazas
        Sr. Vice President-Human Resources

Date: ___3/28/14_____