# Exhibit 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO.: 14-CV-23454-KMW

DEL MONTE FRESH PRODUCTION, INC.,

        Plaintiff,

v.

TS STAFFING SERVICES INC., d/b/a
CORPORATE RESOURCE SERVICES,

        Defendant.

_____/

### DECLARATION OF ZOLTAN PINTER IN SUPPORT OF
### DEL MONTE'S MOTION FOR FINAL DEFAULT JUDGMENT
### AND TO DISMISS COUNTERCLAIM WITH PREJUDICE

I, Zoltan Pinter, under penalty of perjury, hereby declare:

1.     I am Associate General Counsel for Del Monte Fresh Produce Company which, like plaintiff Del Monte Fresh Production, Inc. ("Del Monte"), is part of the Fresh Del Monte group of companies. As part of my job duties, I have overseen the relationship between Del Monte and defendant TS Staffing Services Inc. ("TSS") as it concerns the performance and enforcement of the Contingent Workforce Supply Agreement between the companies and dated January 7, 2014. I make this Declaration upon the best of my knowledge and belief.

2.     Pursuant to the Agreement, TSS was obligated to provide Del Monte at its tomato farms in Florida workers and supervisors as requested by Del Monte during the 2013-2014 tomato growing season. TSS breached the Agreement by failing to provide Del Monte with the requested workers and supervisors.

3.     The Agreement provides that TSS shall indemnify Del Monte for "any and all...loss [or] damage...arising or in any way connected with the Services provided pursuant to the

Agreement and to pay to Del Monte for all expenses incurred by Del Monte in the event that [TSS] fails to meet performance requirements or compliance standards as set forth in [the] Agreement...." (Ex. A to Complaint, Agreement at §§ II, III.)

4.      As a result of the breach, Del Monte incurred losses because it was unable to harvest tomatoes equaling approximately one million 25 pound boxes.  In addition, due to quality issues relating the sale of tomatoes that were untimely harvested, Del Monte suffered the additional loss of over 500,000 25 pound boxes of tomatoes.

5.      In order to quantify its damages, Del Monte retained Patrick F. Gannon as an expert witness.  As set out in Mr. Gannon's expert witness report filed in this action, Del Monte's losses as a result of TSS' breach total $12,802,395, plus pre- and post-judgment interest as provided by applicable law.1  (A copy of the report is attached as Exhibit A hereto.)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 19, 2015

_____
Zoltan Pinter

---

1In the Expert Report, Mr. Gannon notes that Del Monte's loss is "subject to a credit of up to approximately $4.1 million of relating to unpaid TSS invoices included in Expenses necessary to generate net tomato revenues." (Ex. A at n.8.)  Del Monte disputes the accuracy of those invoices (including by reason of improper billing, duplicate billing, and lack of backup).  Had it chosen to litigate this action, TSS would have had the burden of establishing its entitlement to any credit against Del Monte's losses and Del Monte and would have litigated the amount, if any, to be credited to TSS pursuant to those invoices.  Del Monte thus does not apply a credit against its net losses of $12,802,395.

# Exhibit A



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 14-CV-23454-KMW

DEL MONTE FRESH PRODUCTION, INC.,

     Plaintiff,

     v

TS STAFFING SERVICES INC., d/b/a
CORPORATE RESOURCE SERVICES,

     Defendant,

_____/

# Expert Witness Report

*Prepared by Patrick F. Gannon,*
*CPA, ABV, CFF, CVA*
March 19, 2015

305 858 5600  m
305 856 3284  f

2699 S. Bayshore Drive
Miami, FL 33133

kaufmanrossin.com



*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

## I.  BACKGROUND[1]

Del Monte Fresh Production, Inc.  ("Plaintiff" or "Del Monte") is in the business of growing and selling fresh produce, including round and other variety tomatoes grown in Florida.  Del Monte and TS Staffing Services Inc., d/b/a Corporate Resource Services ("Defendant" or "TSS") entered into a Contingent Workforce Supply Agreement ("Workforce Agreement"), dated January 7, 2014[2] under which TSS was to provide workers, supervisors, and the other services ("Workforce") including from 1,016 up to 2,000 "workers and tractor drivers" for weeks 15 to 24 (2014)[3] to perform the functions of Tomato Picking, Hauling and Packing.  Among other qualifications the Workforce was to be "*competent and capable of (a) laying plastic; (b) staking; (c) pruning; (d) tying; (e) planting; (f) tomato picking; (g) hauling; and (h) such other activities and duties performed in the operation of the Business*"[4]

Del Monte claims that TSS breached the Workforce Agreement by failing to provide the requested Workforce in connection with the harvest of Del Monte's tomato fields during the spring 2014 season (the "Season") and in particular, that every week of the Season TSS failed to provide Del Monte with the full required Workforce.[5]  Del Monte also claims that the Workforce Agreement provides that TSS shall indemnify Del Monte for "*any and all...loss, [or] damage...arising or in any way connected with the Services provided pursuant to the Agreement and to pay to Del Monte for all expenses incurred by Del Monte in the event that [TSS] fails to meet performance requirements or compliance standards as set forth in [the] Agreement.... (Agreement at §§ II, III.)*".[6]

---

[1] This section sets forth my general understanding of background information, based upon pleadings, discussions with Counsel to the Plaintiff, and other sources referenced herein and it is not intended to represent any expert opinions. Additionally, exhibits and/or charts shown herein may not foot due to rounding and decimals points.
[2] Including a March 11, 2014 addendum an April 14, 2014 Addendum No. 2.
[3] That is, the 15th week through the 24th week of 2014.
[4] Defined as including "*the growing of ... produce*". Workforce Agreement.
[5] Included within daily examples provided by Del Monte in its Complaint is Saturday, May 3, 2014, a day in which TSS allegedly provided only 116 out of 1,290 requested workers, or less than 9% of that requested.
[6] Complaint, ¶12.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

As per the Complaint, Del Monte demands compensatory damages, pre-judgment interest, attorney's fees, and costs.  Del Monte further reserves the right to seek to amend to assert a claim for punitive damages, as appropriate.

TSS, by way of an Amended Counterclaim dated October 27, 2014 ("Counterclaim") alleges that Del Monte failed and refused to pay TSS the agreed upon rates for temporary employees and related services provided by TSS pursuant to the Workforce Agreement and is demanding "*an amount in excess of $7,750,000, exclusive of accrued interest, for temporary employees and related services.*"  TSS makes further allegations that in or about September 2014, TSS and Del Monte entered into a Contingency Supply Workforce Agreement related to Del Monte's Phoenix, Arizona location; and notwithstanding that TSS does not have a copy of that agreement in its possession, it is claiming that Del Monte breached that agreement and presently owes TSS an amount in excess of $57,000.  Del Monte denies any breach.  Del Monte admits it entered into an agreement relative to its Phoenix location and that it has refused to pay certain amounts to TSS; however any non-payment is by reason of TSS's breaches of its agreements with Del Monte.[7]

## II.  ASSIGNMENT

Kaufman Rossin & Co. ("KR", "We" or "Us") was retained by the law firm Boies, Schiller & Flexner, LLP, counsel to Del Monte ("Counsel"), in February 2015.  I, Patrick Gannon, a principal of KR, have directed the engagement, and am being offered as an expert witness in this matter.  I was asked by Counsel to assume that Del Monte will prevail on its legal claims, including its claims for compensatory damages and i) to calculate economic losses suffered following commonly applied methodologies within a reasonable degree of certainty, ii) to perform a calculation to quantify excess expenses incurred, iii) to prepare this report setting forth my opinions and the bases for them and iv) to calculate pre-judgment interest on both the economic losses and excess expenses to aid the Court should it find pre-judgment

---

[7] That is Del Monte's rights under the Workforce Agreement and/or the Omnibus Amendment to All Contingent Workforce Supply Agreement between Del Monte, TSS and Diamond Staffing Services, Inc., dated July 11, 2014.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

interest is awardable. Additionally, I was asked to be available i) to consider any Counterclaim damages and related bases that may be put forth, ii) to read or analyze any additional relevant information that may be forth coming such as reports, discovery documents, deposition testimony, etc., iii) to consult with Counsel and/or the court on technical or otherwise specialized evidence related to my analyses and iv) to be available to testify by deposition and/or at the trial of this matter.

## III.   EXECUTIVE SUMMARY OF OPINIONS

Economic Losses

As is discussed more fully herein, I calculated economic losses ("Losses") suffered by Del Monte following a commonly applied methodology assuming it prevails on its legal claims. In particular I calculated Losses to be the difference between the net amount Del Monte received and the net amount expected to have been received but-for the alleged actions of the Defendant. In my opinion, assuming Del Monte prevails on its legal claims, and based upon the work performed to date, Del Monte has suffered net Losses of approximately $12.8 million[8], before pre-judgment interest, summarized as follows:

| Description | But-For Amounts | Exh | Actual Amounts | Exh | Losses |
|---|---|---|---|---|---|
| Gross Tomato Revenues | $ 28,942,724 | A | $ 12,069,803 | B | $16,872,920 |
| Post sale Credits | (1,300,232) | C | (1,714,856) | C | 414,624 |
| Net Tomato Revenues | 27,642,491 | | 10,354,947 | | 17,287,544 |
| Expenses necessary to generate net tomato revenues | (24,254,028) | D | (19,768,879) | D | (4,485,149) |
| NET AMOUNTS / LOSSES | $ 3,388,463 | | $ (9,413,932) | | $12,802,395 |

---

[8] Net Losses of approximately $12.8 million, before pre-judgment interest, are subject to a credit of up to approximately $4.1 million relating to unpaid TSS invoices included in Expenses necessary to generate net tomato revenues.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

### Excess Expenses Damages

I have also calculated excess expenses ("Excess Expenses") incurred with no resulting benefit due to the alleged actions of the Defendant.  Specifically, I quantified the amounts expended by Del Monte relative to cultivating,[9] harvesting, packing, and other costs incurred for growing and selling tomatoes over and above what it would have incurred to grow and sell the actual quantities sold but-for the alleged breach of the Workforce Agreement.  This analysis, as is discussed more fully below, reflects that Del Monte incurred Excess Expenses aggregating approximately $9.9 million[10], before pre-judgment interest, summarized as follows:

| Description | Actual Expenses | Exh | Excess Expenses |
|---|---|---|---|
| Cultivation | 8,529,056 | H | 4,972,237 |
| Harvesting | 3,371,545 | H | 1,974,896 |
| Packing | 4,542,304 | H | - |
| Administrative Costs | $    3,325,974 | H | $    1,938,964 |
| TOTALS | $ 19,768,879 | | $ 8,886,098 |
| Plus: Cost of Credits due to alleged actions of Defendant | | C | 1,059,697 |
| **Excess Expenses incurred by Del Monte** | | | **$   9,945,795** |

### Counterclaim

Regarding TSS's Counterclaim, as it has not articulated with any degree of specificity the bases for its claimed $7,750,000 and $57,000 damages and TSS has not set forth any analysis of the alleged failure of Del Monte "*to pay TSS the agreed upon rates*",[11] I have no opinions at this time as to the propriety of those amounts.  To the extent that TSS puts forth such claims with any specificity and the bases for them, I expect to review that information and I may have opinions related thereto.   I have not assumed any amount is due to the Defendant for any unpaid invoices.[12]

---

[9] That is, field preparation, planting and caring for during the growing stage.
[10] Excess Expenses of approximately $9.9 million, before pre-judgment interest, are subject to a credit of up to approximately $4.1 million relating to unpaid TSS invoices included in the Actual Expenses.
[11] Counterclaim, ¶ 18.
[12] Unpaid TSS invoices are not assumed to be due as Del Monte has represented that many such invoices are not valid for reasons such as double and triple billing of the same work on various invoices, lack of support, etc.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

Should it be determined that more than the approximate $4.1 million of actual expenses that have not been paid are in fact due to TSS, the consequence would be additional "actual" losses to Del Monte. Consequently, should this occur, and should Del Monte prevail on its legal claim that it is entitled to the difference between actual net profits/(losses) and net profits but-for the actions of the Defendant, damages would increase accordingly.

## IV.   BASES FOR OPINIONS

### *Assumptions*

As is mentioned above, my opinions are premised on the assumption that Del Monte prevails on its legal claims; I have no opinions as to liability.  Further, in my experience causation is often an assumption to be made by damages experts; I therefore have assumed that the alleged actions of the Defendants in fact caused the Losses and/or Excess Expenses reflected herein.  As to causation generally, I also understand that financial experts should at least consider a causal link between legal claims and resultant damages, [13] and in connection therewith, in performing my analyses I considered the causation factors i) discussed in a report prepared by Mr. Marshall Hartley[14] dated March 18, 2015 ("Hartley Report"), ii) depicted in a series of contemporaneous videos of the fields at issue, iii) reflected in Plaintiff's data relative to the number of workers requested versus the number of workers observed in the fields and iv) illustrated in an analyses of pricing trends.  This information appears to be supportive rather than contrary to the causation assumption.[15] Further, and more relevant is that I found no noteworthy facts that may have principally caused or significantly exacerbated the Plaintiffs damages that I believe should

---

Additionally, as Del Monte alleges the Workforce provided was not competent in accordance with the Workforce Agreement, it often picked non-saleable tomatoes and billed for those quantities while a competent workforce would have picked only the saleable tomatoes.  Further, according to Alberto Calderon, who was present in the packing facility during the Season, TSS often supplied sufficient workers for packing while insufficient workers for harvesting; resulting in packing workers standing around with nothing to do, and excess costs.

[13] Chapter 3, Causation Issues and Expert Testimony.

[14] "Analysis of Tomato Production".  Mr. Hartley is understood to be an expert in the practice of growing tomatoes in Florida.

[15] These observations are NOT intended to be finder of fact opinions and are NOT intended to be a legal opinions; rather certain factors I observed in my endeavor to understand them, as they relate to damages.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

be factored into my analysis.  Finally, I have assumed that Del Monte would have been able to sell the but-for quantity of tomatoes without materially impacting market prices.

### *Losses*

In quantifying Losses I considered the information set forth in section V to this report, or otherwise referenced herein and I relied upon the opinions of Mr. Marshall Hartley as an expert in the tomato growing industry.  Additionally, I considered and relied upon certain forecasted information based upon an Expected Yield study prepared by Dr. Manuel I. Zantua, Ph.D. ("Yield Study").[16]

In my experience as a forensic CPA, business valuator and damages expert I have calculated compensatory damages many times based upon a measure of economic loss represented by the difference between the net profits that the plaintiff would have realized but for the defendant's actions, and the plaintiff's actual net profits.[17]  Based upon the facts and circumstances as I understand them, it is my opinion that the most appropriate methodology for determining the Losses suffered by Del Monte in the instant matter is this approach - a measure of the reduced operating performance caused by the alleged breach.  My analyses make use of quantitative factual and sometimes empirical evidence[18] supporting expected revenues, related costs and net profits.

Generally, as is discussed more fully below, I determined damages suffered by adjusting various actual amounts to estimated likely amounts but-for the alleged acts of the Defendant; including adjusting i) the Season's harvest yields, ii) consequential gross revenues iii) post sale credits[19] and iv) costs necessary to generate gross revenues.  I calculated the resulting but-for net profits and I subtracted actual net profits and certain incurred, to arrive at net Losses.

---

[16] The Yield Study reflects expected product yields by acre based upon soil quality, including yields by expected pounds and boxes.
[17] This approach is also supported by the Litigation Services Handbook, the Role of the Financial Expert, fifth edition, by Roman Weil, Daniel Lentz and David Hoffman ("Weil Treatise"), at 4.3(a)(iv); a publication believed to be commonly referred to by experts in calculating damages.
[18] Such as a contemporaneous study of actual yields available, actual pricing information and empirical yardstick data.
[19] Some level of credits is expected for quality, grade and various other factors.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

To adjust the Season harvest yields to but-for quantities, I made use of forecasted harvest quantities[20] compared to actual harvested quantities.[21]  Additionally, I noted the Hartley Report findings from Mr. Hartley's on the ground analyses demonstrate that approximately 40,000,000 pounds of packable tomatoes were left unpicked to rot on the vines.[22]

As to determining but-for gross revenues, utilizing but-for yields, by variety, I reduced the but-for yields by estimated shrinkage of 10%[23] and multiplied each variety's forecasted yield by the weekly average selling price published by the  USDA[24] for Florida farmed tomatoes.  I found the selling prices initially achieved by Del Monte to be supported by those published by the USDA, however, over the Season prices achieved by Del Monte ultimately averaged substantially less than the USDA benchmark prices.  For example, the Season average prices achieved by Del Monte,[25] by variety as compared to the USDA published prices during the April 19 through June 26, 2014 weeks were as follows:

| Variety | Del Monte | | USDA | % Higher |
|---------|-----------|---|------|----------|
| Round | $ | 8.22 | $          10.26 | 24.87% |
| Roma | $ | 6.68 | $           9.04 | 35.42% |
| Grape | $ | 11.30 | $          13.90 | 22.98% |
| Cherry | $ | 7.99 | $           8.33 | 4.21% |

Del Monte has represented the significant disparity between Del Monte's prices and the USDA average published was caused by the very issues alleged in the Complaint;[26] my consideration of the trend is prices is as a basis for utilizing USDA published pricing in my model rather than the actual prices

---

[20] Based upon the Yield Study.
[21] Per Del Monte data believed to have been prepared contemporaneously.
[22] See Exhibit F.  Relevant is that per discussion with Mr. Hartley, he "rounded" down to the nearest pound on each plant tested – this results in an ultimate Loss amount that is conservative in favor of the Defendant.
[23] 10% is based upon discussions with both Paul Rice (Del Monte's Vice President - RD), Elvin Engle, (Del Monte's Director of Farming) and Alberto Calderon (Del Monte's Finance Manager), who each separately represented 10% is expected industry average shrinkage.  Additionally, I noted the Hartley Report opinion is as follows: "*Based on my experience, the cull rate is typically around 10%.*"
[24] See http://151.121.3.194:8080/dashboard/?toolbar=0&d=390.
[25] Note that prices achieved by Del Monte were gross selling prices, before credits as net selling prices may have been depreciated due to the factors claimed in the instant mater.
[26] However, that is for the determination of the trier of fact.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

achieved by Del Monte.[27]  This trend is evident when looking at a chart for the highest volume variety;

Round:



To determine but-for post-sale credits, We reviewed a detail of the credits given during the

relevant period, discussed the specific categories of credits with Alberto Calderon,  and removed credits

that were represented to have been directly caused by the alleged actions of the Defendants.  I thereafter

assumed normal but-for post-sale credits to be on average approximately $0.46 per box sold.

Finally, to establish but-for costs necessary to generate gross revenues I adjusted expenses

associated with the Season to the amounts they would have been had the but-for sales been achieved.  In

particular, we discussed all costs at a detail level with Alberto Calderon to understand them.  Thereafter

we compared actual harvest yields to forecasted harvest yields and I calculated the but-for cost of

harvesting based upon the Workforce Agreement terms applied to the gross forecasted harvest yields (See

***EXHIBIT D***).  As to costs to pack, I compared the actual quantities packed and sold to forecasted

quantities and assumed all other things being equal, that the resources necessary to effectuate the actual

---

[27] I believe it is more appropriate to utilize the USDA published average pricing due to the nature of the product and to insure calculated Losses are not negatively impacted by the factors claimed in the instant mater.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

packed quantities would proportionately have been necessary to achieve the forecasted quantities.[28]

Based upon these analyses, I adjusted the actual cost incurred up to the but-for costs to harvest and to

pack.  As to administrative costs and cultivation costs, I assumed the but-for costs to be substantially

equivalent to the actual such costs.

As set forth above, based upon my analyses to date discussed herein and in the exhibits hereto, it

is my opinion that, should Del Monte prevail on its legal claims that Net Losses suffered are

approximately $12.8 million.

### *Pre-Judgment Interest on Net Losses*

As an aid to the Court I was asked to calculate pre-judgment interest should it find that an award

of interest is due on net Losses.  My calculation is based upon statutory interest rates in Florida following

Section 55.03 of Florida Statutes for pre-judgment interest, on a simple, non-compounded basis.  I

assumed damages based upon a pro-rata estimate of Net Losses each week during the Season utilizing

each actual week's sales and further assumed that any additional payments would have been collected

within 30 days of each week's sales.  Based on these assumptions I calculated prejudgment interest

through March 19, 2015 on Net Losses to aggregate approximately $308 thousand with daily interest

thereafter of $1,127 going forward thereafter (See ***EXHIBIT G***).

### *Excess Expenses*

Based upon the analyses discussed above, and in the exhibits to this report I performed a further

analysis to quantify Excess Expenses.  In calculating Excess Expenses I i) reviewed actual expenses in

relation to actual quantities cultivated, harvested and packed, ii) estimated what the but-for expenses

would likely have been to cultivate, harvest and pack the quantities actually sold and iii) calculated the

portion of actual expenses that were in excess of those needed to support the actual quantities (See

***Exhibit H***).  Additionally, I factored in the excess credits (i.e. money returned to customers) due to the

---

[28] To the extent that the workforce supplied as packers was sufficient to handle the forecasted yields, actual packing costs would represent but-for packing costs; therefore, should that hold true, by adjusting but-for packing costs up results in conservative damages in favor of the Defendant.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

actions of the Defendants.  To the extent that the alleged actions of the Defendant caused Del Monte to

return, or waive collection of moneys otherwise due, these credits are essentially customer retention

related expenses that would otherwise have not been incurred.

Specifically, relative to Excess Expenses related to cultivation, I found that notwithstanding that

that tomatoes cultivated should have yielded the but-for gross tomato revenue discussed above, because

of the alleged actions of the Defendant the actual gross revenue was approximately 58% lower than that

amount.  All other things being equal, Del Monte could have planted 58% less, incurred 58% less

cultivation related expenses and effectuated the same saleable yields – therefore, in my opinion the

Excess Expenses associated with cultivation was 58% of the actual cultivation expenses.[29]

As to harvesting, as discussed above, I found that but-for harvesting costs necessary to effectuate

the but-for gross revenues to be approximately $3.35 million.  Being that 42% of the but-for gross sales

were achieved, it is my opinion that harvesting costs necessary to realize actual sales should have been

approximately 42% of the $3.35 million but-for harvesting costs.

Relative to packing expenses, although Del Monte has represented that TSS had supplied

sufficient workforce to pack and that it supplied insufficient workforce to harvest, the packers often had

no product to pack and consequently were highly inefficient.  To the extent that the workforce supplied as

packers was sufficient to handle the forecasted yields, actual packing expenses were similarly excessive

by 58% due to the alleged actions of the Defendant.  For purposes of this report however, I have assumed

that the actual packing expenses represented but-for packing expense relative to the actual quantities sold

- resulting in conservative damages in favor of the Defendant.

---

[29] Relevant is that this methodology assumes there was no excess inefficiency in the cultivation process by TSS; which is contrary to Del Monte's allegations.  The consequence of this assumption is a resulting damage calculation that is conservative in favor of the Defendant.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

Excess Expenses related to administrative costs were calculated following the same methodology as those for cultivation. That is, assuming all other things being equal, Del Monte could have planted 58% less, incurred 58% less administrative expenses[30] and effectuated the same saleable yields – therefore, in my opinion the Excess Expenses associated with Administrative costs was 58% of the actual Administrative costs.

As set forth above, based upon my analyses to date discussed herein and in the exhibits hereto, it is my opinion that, should Del Monte prevail on its legal claims and should it be determined that Excess Expenses are awardable, rather than net Losses, Excess Expense damages suffered are approximately $9.9 million.

### *Pre-Judgment Interest on Excess Expenses*

As above, I was asked to calculate pre-judgment interest should it find that an award of interest is due on Excess Expenses. My calculation is based upon statutory interest rates in Florida following Section 55.03 of Florida Statutes for pre-judgment interest, on a simple, non-compounded basis. I assumed damages based upon a pro-rata estimate of Excess Expense each week during the Season utilizing each actual week's sales and further assumed that any additional payments would have been collected within 30 days of each week's sales. Based on these assumptions I calculated prejudgment interest through March 19, 2015 on Excess Expense to aggregate approximately $206 thousand, with daily interest thereafter of $755 going forward thereafter (See ***EXHIBIT I***).

## V.   ADDITIONAL DATA AND OTHER INFORMATION CONSIDERED

In conducting this engagement to date, I have held discussions with Counsel and Del Monte representatives' Zoltan Pinter, Elvy Engle, Joe D'Ottavio, Alberto Calderon and Charles Briggs, I

---

[30] Although the administrative expenses include some costs that by definition are fixed costs and not highly variable in relation to revenues in the short term, facts and circumstances in the instant matter, including the significantly lower actual yield as compared to the cultivated yield, are such that had Del Monte planned operations for the actual yield, it is my opinion that any such fixed costs would likely have been substantially lower as well, consistent with managerial and cost accounting concepts.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

reviewed and/or considered documents and other information provided by Del Monte and Counsel as

described throughout this report and as follows:

Pleadings and Related Documents
- Complaint dated September 18, 2014.
- Defendant's Answer and Affirmative Defenses dated October 14, 2014.
- Amended Counterclaim dated October 27, 2014.
- Answer to Amended Counterclaim dated November 13, 2014.

Discovery Documents:
- Del Monte's loss calculation titled *"Spring 2014 - Cost Impact due to Shortage in Manpower"*.
- Various videos taken by Mr. Marshall Hartley during June 12 through 16, 2014.
- Planting by Variety Acres for Farms 60, 62, and 64.
- Del Monte Credit Report by Customer from January 1, 2014 through August 5, 2014 (RP741).
- Manuel Zantua, Ph. D, memo dated April 28, 2014 and March 6, 2014.
- Del Monte Field Measurement Reports.
- Del Monte Soil Quality Reports.
- Del Monte Sales Report by Customer from April 1, 2014 through July 31, 2014 (RP731).
- Del Monte Weekly Harvest – Product Detail from April 1, 2014 through July 31, 2014 (GR121).
- Del Monte RPK Summary & Shrink – Week Detail from April 1, 2014 through July 31, 2014 (RP011).
- Del Monte General Ledger reports for Cultivation #5315, Harvesting #5111, Packing #5120 and fixed expenses #5011 and #7001 through #7585.
- USDA price printouts for weeks 16 through 26.
- Report of Marshall Hartley, dated March 18, 2015.
- Del Monte 12 Month Lookthru Report dated March 11, 2014 and November 11, 2014.
- Del Monte Accounts Payable payment history report for TS Staffing Services.


Third Party Documents:
- USDA AMS Average Price Data - http://151.121.3.194:8080/dashboard/?toolbar=0&d=390.
- Litigation Services Handbook, the Role of the Financial Expert, fifth edition, by Roman Weil, Daniel Lentz and David Hoffman
- Florida statutory interest rates - http://www.myfloridacfo.com/Division/AA/Vendors/


**VI.**   **PENDING DISCOVERY AND ASSIGNMENT CONTINUATION**

As discovery is ongoing and additional information is provided to me, my opinions may be

clarified.  I may also have additional opinions as a subset of those expressed herein and the scope of my

assignment may be expanded (as may be permitted).   In addition, I may generate demonstrative exhibits

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

for use at the trial of this matter from the source materials previously produced by the parties.

## VII.   QUALIFICATIONS AND FEES

I am currently a Shareholder of Kaufman, Rossin & Co., P.A.  I received an undergraduate degree in Business Administration-Accounting from Florida International University in 1984, and a Masters of Professional Accountancy from the University of Miami in 1985.  My professional certifications include: Certified Public Accountant since 1986, Certified Valuation Analyst since 1998, Accredited in Business Valuation since 2006, and Certified in Financial Forensics since 2008.

I am a member of the American Institute of Certified Public Accountants (AICPA) and the Florida Institute of Certified Public Accountants (FICPA).  I served on the FICPA Accounting Principles and Auditing Standards Committee from 1996 through 2002 (chairman 2001 – 2002), and I served on the FICPA Professional Liability Committee in 1996-1997.

### *General Experience:*

Within the preceding ten years I have authored three articles.  The first is entitled *Got out of SOX? New Rules Affect Private Companies*, published Monday February 19, 2007 in the Miami Herald Business Monday section.  Posted on Herald.com as *New Standards Affect Companies Missed by Sarbanes Oxley*.  The second is entitled *Demystifying Mark-To-Market*, published in Forbes.com on April 21, 2009.  The third is entitled *Forensic CPAs: A Key Resource for Corporate Counsel* published in BNA's Corporate Counsel Weekly Volume 26, Number 24 on June 22, 2011.

Within the preceding four years I have testified at trial and/or by deposition, and/or in hearings as follows:

- Daniel W. McCravy, III, v Petroleum Realty I. LLC, et al, Case No. 11-39616-PGH, in the United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division, to be heard by Judge Erik P. Kimball.  Deposition testimony on indicia of alter ego and fuel supply contract valuation on February 20th 2015.
- Managed Care Insurance Consultants, Inc. v United Healthcare Insurance Company, et. al., Case No. 01-14-0000-8617, before the American Arbitration Association, to be heard by Elaine Feldman, Leslie Langbein and Steven Platau.  Deposition testimony on damages on February 13th 2015.
- Alejandro Omes v Ultra Enterprises Inc., et al, Case No. 12-32924 CA, in the Complex Business Litigation Section of the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County,

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

Florida, to be heard by Judge Jennifer D. Bailey.  Deposition testimony on business valuation/intellectual property valuation on December 30th 2014.

- Block 40, LLC, et al v CND Group, LLC, successor to Ocean Bank, Case No. 14-003876 05, in the Circuit Court and for the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Thomas M. Lynch.  Deposition testimony on interest calculation of promissory note on December 4th 2014.

- Palm-Aire Holdings, LLC v JRGS Investments, LLC and Jorge Garcia –Saraff, Case No. 11-24994 CA 06, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Judge David C. Miller.  Deposition testimony on transaction damages and lost opportunity damages on December 1st 2014.

- David Rosenthal, et. A., v Palm Beach Emergency Medicine Associates, P.L. et. al., Case No. 502011 CA 00691 XXXMB AF, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge Janis Brustares Keyser.  Deposition testimony on indicia of ownership v non-ownership interests based upon books and records, October 2nd 2014.

- David Hopkins v Geltech Solutions, Inc, et al, Case No. 502008 CA 017955XXXXMBAF, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, heard by Judge Janis Brustares Keyser.  Trial testimony on stock option/warrant valuation and damages, September 9th and 10th 2014.

- Alan W. Weber, et al v Bluegreen Corporation, Shareholder Litigation, Case No. 502011 CA 018111, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge Glenn D. Kelley.  Deposition testimony on business valuation on September 4th 2014.

- Sky Lease I, Inc. v. Aerotransportes Mas De Carga, A.A., Mas Air Cargo Airline, and Bluebird Leasing, LLC, Case No. 1:13-CIV-21276- MOORE/TORRES, in the United States District Court, Southern District of Florida, to be heard by Judge K. Michael Moore.  Deposition testimony on lost profits damages on May 16th 2014.

- Ironshore Indemnity Inc., Federal Insurance Company, St. Paul Fire and Marine Insurance Company, RLI Insurance Company, Columbia Casualty Company, Westchester Fire Insurance Company, Zurich American Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA. v. Banyon 1030-32, LLC, Banyon Capital, LLC, Banyon Funding, LLC, Banyon Resources, LLC, Banyon Investments, LLC, Banyon Income Fund, L.P., Banyon USVI LLC, and Robert Furr, as the Chapter 7 Trustee for the Banyon 1030-32, LLC and Banyon Income Fund, LP bankruptcy Estates, Case No. 12-61678-CIV-COOKE/TURNOFF, in United States District Court, Southern District of Florida, Fort Lauderdale Division, to be heard by Judge Cooke.  Deposition testimony on forensic tracing and quantification of period specific gains/losses on April 14th 2014.

- Gotta Have It Golf, Inc v. Arnold Palmer Enterprises, Inc., and ETW CORP., Case No. 03-19490 CA-20, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, heard by Judge Jeffrey E. Streitfeld.  Trial testimony on damages, failure to report and accuracy of books and records issues on March 12th 2014.

- Xotic Super Cars v. Deric Tikotsky et al, Case No. 2013 CA 009662 AB, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, heard by Judge Thomas H. Barkdull.  Trial testimony on business valuation and damages, February 24th 2014.

- Gotta Have It Golf, Inc v. Arnold Palmer Enterprises, Inc., and ETW CORP., Case No. 03-19490 CA-20, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Judge Jeffrey E. Streitfeld.  Deposition testimony on damages, failure to report and accuracy of books and records issues on February 12th 2014.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

- The Watershed Treatment Programs, Inc. v. Carefirst of Maryland, Inc. et al, case No. 08-26715-CA, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.  Deposition testimony on damages and the reasonable valuation of services provided on January 22nd 2014.

- Xotic Super Cars v. Deric Tikotsky et al, Case No. 2013 CA 009662 AB, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, to be heard by Judge Thomas H. Barkdull. Deposition testimony on business valuation and damages, January 17th 2014.

- David Hopkins v. Geltech Solutions, Inc., et al, Case No.: 502008CA017955, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge Janis Brustares Keyser.  Deposition testimony on Stock Warrant valuation/damages on December 19th 2013.

- Apothecary Development Corporation d/b/a ISLAND DRUG, et al, v. City of Marco Island, Florida, Thom Carr, individually and as Chief of Police of Marco Island, FL, Case No.: 2:10-CV-392-FtM-36-DNF, In the United States District Court, Middle District of Florida, Ft Myers Division, to be heard by Judge Sheri Polster Chappell, referred to Judge Douglas N. Frazier.  Deposition testimony on business valuation, diminished business value and lost profits on September 3rd 2013.

- Stephen Lehman and Harold Wrobel v. Kenneth Eldridge, case No. 1:11-CV-23973-ROSENBAUM/SELTZER in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Judge Robin Rosenbaum.  Deposition testimony on minority shareholder/breach of contract damages on August 21, 2013.

- Victor Hugo Navarro v. Telefonica USA, Inc., case No. 12-42501 CA 13 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Judge Trawick. Deposition testimony on employment/personal damages on August 19th 2013.

- State of Florida, Office of Financial Regulation v. Banco Industrial de Venezuela, C.A. et al., case No. 0281-FL-03/12, to be heard by a Florida administrative judge. Deposition testimony on generally accepted accounting standards, capital, and regulatory issues, July 11th 2013.

- Casita, L.P., derivatively on behalf of Maplewood Equity Partners (Offshore Fund) Ltd., v. Robert V. Glaser, Maplewood Holdings, LLC, Maplewood Management LP, and Maplewood Partners LP, Case No. 600782/07, before the Supreme Court of the State of New York, County of New York, to be heard by judge Marcy S. Friedman.  Deposition testimony on due diligence and business valuation, February 22nd 2013, and March 6th 2013.

- Magellan Behavioral Health, Inc., v. Molina Healthcare of Florida, Inc. Case No. A-052011-924, before the American Health Lawyers Association Alternative Dispute Resolution Service, Washington DC, heard by Nancy Lesser.  Final hearing testimony on accounting issues and lost past and future profits, December 20 and December 21st 2012.

- Green and Barr Corp, et al v Can-Do Recycling, LLC et al, Case No. 09-62358 CA 15, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to heard by Judge John W. Thornton.  Hearing testimony via affidavit, confirmed in person, regarding frauds upon the court on December 14th 2012.

- Magellan Behavioral Health, Inc., v. Molina Healthcare of Florida, Inc. Case No. A-052011-924, before the American Health Lawyers Association Alternative Dispute Resolution Service, Washington DC, to be heard by Nancy Lesser.  Deposition testimony on accounting issues and lost past and future profits, December 7th 2012.

- Ryan Gill v. Patrick Moran and Ruden, McClosky, Smith Schuster, and Russell, P.A. Case No. 09-047531 (13), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, heard by Judge Jeffrey E. Streitfeld.  Trial testimony on business valuation issues, September 28, 2012.

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

- Caribe Envio v. Bank of America, Case No. 09-06163, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, heard by Judge James Barton II. Trial testimony on business valuation, destruction of business value damages and lost profit damages on September 11, 2012.

- BVS Acquisitions Co., LLC, and Arthur W. Hooper, Jr. v. Rory A. Brown, Case No. 9:12-CV-80247-DMM, in the United States District Court, Southern District of Florida, West Palm Beach Division, to be heard by Judge Donald Middlebrooks. Deposition testimony on material misrepresentations and internal controls on August 16, 2012.

- Woodbridge Holdings, LLC, v. Prescott Group Aggressive Small Cap Master Fund, G.P. et al Case No. 09-64811 (25), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, heard by Judge Carol-Lisa Phillips. Trial testimony on business valuation and Fair Value in a Dissenters' action on May 31, 2012.

- Woodbridge Holdings, LLC, v. Prescott Group Aggressive Small Cap Master Fund, G.P. et al Case No. 09-64811 (25), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Carol-Lisa Phillips. Deposition testimony on business valuation and Fair Value in a Dissenters' action on May 2, 2012.

- Ryan Gill v. Patrick Moran and Ruden, McClosky, Smith, Schuster, and Russell, P.A. Case No. 09-047531 (13), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Jeffrey E. Streitfeld. Deposition testimony on business valuation damages on April 23, 2012.

- Cornerstone SMR, Inc. v. Janette Schafer, JustTime, Inc. and Bank of America, Case No. 08-40096 CACE 03, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, heard by Judge Milly Rodriguez-Powell. Trial testimony on internal controls, comparative negligence and damages on January 26, 2012.

- Allen R. Greenwald et al v. Eisiner, Brown, Lewis & Frankel, P.A., et al, Case No. 08-37123 CA 08, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, heard by Judge Jerald Bagley. Trial testimony on compensatory damages on January 25, 2012.

- Molina Healthcare of Florida, Inc. and Physician Consortium Services, LLC, HS1NetPass, LLS and Care NetPass, LLC and Molina Healthcare, Inc. Case No. 32-193-00516-10, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to be heard by Arbitration Association. Deposition testimony on damages in November, 2011. Matter settled in December 2011.

- Petroleum Realty I, LLC et al v. REB of Florida, Inc. et.al. , Case No. 50-2004CA005889, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge David E. French. Hearing testimony on discovery issues before Special Master, Retired Judge Robert Colton in October, 2011.

- Ocean-Fairwind, LLC v Mellon United National Bank, Case No. 09-24842 CA 40, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Complex Business Litigation Section, to be heard by Judge Peter Lopez. Deposition testimony on breach of contract damages in August, 2011.

- Sheridan Healthcorp, Inc. v. AvMed, Inc., Case No. 06-02992 (07), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Jeffrey E. Streitfeld. Deposition testimony on billing dispute/business damages in July, 2011.

- Mohammad Al Saleh v. Harry Sargeant, III; Mustafa Abu-Naba'a and International Oil Trading Company, LLC, Case No. 50-2008-CA-010187, in the Circuit Court of the Fifteenth Judicial Circuit

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

in and for Palm Beach County, Florida, heard by Judge Robin Rosenberg.  Deposition and trial testimony on fraud damages in July, 2011.

- Carlos Leon v. United Parcel Service, Inc., Case No. 10-cv-23937-MGC, in the United Status District Court, Southern District of Florida, Miami Division, to be heard by Judge Huck. Deposition testimony on FMLA/wrongful termination damages in June, 2011.

- Petroleum Realty I, LLC et al v. REB of Florida, Inc. et.al. , Case No. 50-2004CA005889, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge David E. French.  Hearing testimony on discovery issues before Special Master, Retired Judge Robert Colton in May, 2011.

I also have the following lecturer experience:

- CLE seminar, Financial Investigations – Presented to In-house Corporate Counsel Summit (3/2011)

- CLE seminar on Employment Litigation – Presented to In-house Corporate Counsel Summit (9/2011)

- CLE seminar on Financial Investigations – Presented to Broward County Bar Association (6/2011)

- CLE seminars on Commercial and Personal Damages and Business Valuations
    - Bilzin Sumberg
    - Hunton & Williams
    - Broad & Cassell
    - Devine Goodman Rasco & Wells
    - Tew Cardenas
    - Shutts & Bowen
    - Cole Scott & Kissane

- CLE seminar on the iPad's role in a Litigation Revolution – Presented at Law Tech Miami CLE conference ( 11/2/12)

- Webinar presentation – Foreign Corrupt Practices Act:

- Ignorance is NOT Bliss, The Forensic Accounting Perspective

- Banking Industry Roundtable Conference – Presented on Industry, Regulatory and Enforcement Trends

- FICPA, Downtown Chapter – The Sarbanes-Oxley Act of 2002, Management's Responsibilities

- Barnett Bank - Lecture on New Developments in Accounting and Auditing from the Bankers Perspective

- FICPA, Dade County Chapter – SEC- Independence Rules (2 hrs of A&A)

*Del Monte Fresh Production, Inc., v TS Staffing Services Inc., d/b/a Corporate Resources Services*
Expert Witness Report of Patrick F. Gannon, March 19, 2015

Kaufman, Rossin & Co., P.A. is being compensated based upon the various levels of skill and responsibility required at hourly rates ranging from $60 per hour to $510 per hour. My hourly rate is $495, subject to change each June 1st, commensurate with firm wide rate increases at the firm's fiscal year end. No portion of our fees is contingent upon the outcome of this matter.

Respectfully submitted,

KAUFMAN, ROSSIN & CO., P.A.

/S/ Patrick F. Gannon

Patrick F. Gannon, CPA, ABV, CFF, CVA
Shareholder, March 19, 2015

**Exhibit A**

### DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.
#### But-For Gross Tomato Revenue

|  | Round | Roma | Grape | Cherry | Total | Exh |
|---|---|---|---|---|---|---|
| **Forecasted Boxes Packed & Shipped** | 2,145,874 | 533,026 | 134,480 | 28,326 | 2,841,707 | **A.1** |
| Effective Weighted Average Weekly Selling Prices | $ 10.26 | $ 9.04 | $ 13.90 | $ 8.33 |  | **A.4** |
| **But-For Gross Tomato Revenues** | $ 22,018,076 | $ 4,819,206 | $ 1,869,528 | $ 235,914 | $ 28,942,724 | **A.3** |

Exhibit A.1

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**

**But-For Weekly Volume[1]**

| Week | Round | Roma | Grape | Cherry | Total | Exh |
|------|-------|------|-------|--------|-------|-----|
| 04/20/14 | 148,051 | 1,184 | 5,284 | 5,831 | 160,350 | |
| 04/27/14 | 240,198 | 20,827 | 9,508 | 3,601 | 274,134 | |
| 05/04/14 | 160,271 | 67,136 | 17,918 | 7,072 | 252,396 | |
| 05/11/14 | 421,969 | 84,032 | 20,471 | 4,314 | 530,786 | |
| 05/18/14 | 291,153 | 134,176 | 15,161 | 2,717 | 443,207 | |
| 05/25/14 | 400,113 | 89,968 | 22,652 | 2,405 | 515,138 | |
| 06/02/14 | 240,530 | 53,321 | 20,725 | 2,386 | 316,962 | |
| 06/08/14 | 168,428 | 54,351 | 13,086 | | 235,864 | |
| 06/15/14 | 40,708 | 16,991 | 5,045 | | 62,744 | |
| 06/23/14 | 31,306 | 1,017 | 4,632 | | 36,956 | |
| 06/30/14 | 3,147 | 10,023 | | | 13,170 | |
| **But-For Forecasted Boxes Packed & Shipped** | **2,145,874** | **533,026** | **134,480** | **28,326** | **2,841,707** | **A.2** |

[1] Weekly volume is based proportionally upon the actual volume sold during this period.

**Exhibit A.2**

### DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.
### But-For Harvest

|  |  | Round | Roma | Grape | Cherry | Total |  |
|---|---|---|---|---|---|---|---|
| Acres per variety |  | 1,042 | 198 | 97 | 19 | 1,357 | (1) |
| Forecasted Yield Harvested/Acre (Total is Weighted Average) |  | 2,288 | 2,990 | 1,537 | 1,635 | 2,327 | (2) |
| **Forecasted # Boxes Harvested** |  | 2,384,305 | 592,252 | 149,423 | 31,473 | 3,157,452 |  |
| Less: Shrinkage | 10% | (238,430) | (59,225) | (14,942) | (3,147) | (315,745) | (3) |
| **But-For Forecasted Boxes Packed & Shipped** |  | **2,145,874** | **533,026** | **134,480** | **28,326** | **2,841,707** |  |

(1) Based upon Field Measurement Report provided by Del Monte.

(2) Based upon Yield Study prepared by Dr. Manuel I. Zuntau, Ph.D (Del Monte's Assistant Vice President - R&D).

(3) Based upon discussions with Paul Rice (Del Monte's Vice President), Elvin Engle, (Del Monte's Director of Farming),
Alberto Calderon (Del Monte's Finance Manager) and the Hartley Report, 10% represents industry average of expected shrinkage.

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**

**But-For Weekly Sales[1]**

| Week | Round | Roma | Grape | Cherry | Total |
|------|------:|------:|------:|------:|------:|
| 04/20/14 | $ 1,572,301 | $ 12,375 | $ 65,781 | $ 49,274 | $ 1,699,731 |
| 04/27/14 | 2,209,822 | 207,233 | 123,128 | 34,026 | 2,574,208 |
| 05/04/14 | 1,434,425 | 600,865 | 218,595 | 63,293 | 2,317,178 |
| 05/11/14 | 2,827,190 | 668,051 | 239,512 | 29,984 | 3,764,737 |
| 05/18/14 | 2,169,092 | 999,612 | 177,386 | 18,882 | 3,364,972 |
| 05/25/14 | 4,481,266 | 895,180 | 315,996 | 16,718 | 5,709,159 |
| 06/02/14 | 3,576,687 | 610,530 | 325,378 | 23,737 | 4,536,333 |
| 06/08/14 | 2,573,573 | 622,314 | 290,500 | - | 3,486,387 |
| 06/15/14 | 617,540 | 203,046 | 113,252 | - | 933,837 |
| 06/23/14 | 509,668 | - | - | - | 509,668 |
| 06/30/14 | 46,512 | - | - | - | 46,512 |
| **But-For Gross Tomato Revenue** | **$ 22,018,076** | **$ 4,819,206** | **$ 1,869,528** | **$ 235,914** | **$ 28,942,724** |

[1] Gross Tomato Revenue is calculated by multiplying but-for weekly volume (Exhibit A.1) by actual industry weekly average prices as published by the USDA (Exhibit A.4).

**Exhibit A.4**

### DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.
#### But-For Average Selling Prices
#### Based Upon USDA Data for Florida Growers

| Date | Round | Roma | Grape | Cherry |
|------|-------|------|-------|--------|
| 04/19/14 | 10.62 | 10.45 | 12.45 | 8.45 |
| 04/26/14 | 9.20 | 9.95 | 12.95 | 9.45 |
| 05/03/14 | 8.95 | 8.95 | 12.20 | 8.95 |
| 05/10/14 | 6.70 | 7.95 | 11.70 | 6.95 |
| 05/17/14 | 7.45 | 7.45 | 11.70 | 6.95 |
| 05/24/14 | 11.20 | 9.95 | 13.95 | 6.95 |
| 05/31/14 | 14.87 | 11.45 | 15.70 | 9.95 |
| 06/07/14 | 15.28 | 11.45 | 22.20 | 12.95 |
| 06/14/14 | 15.17 | 11.95 | 22.45 | |
| 06/21/14 | 16.28 | | | |
| 06/28/14 | 14.78 | | | |
| **Effective Weighted Average Weekly Selling Price** | **$ 10.26** | **$ 9.04** | **$ 13.90** | **$ 8.33** [1] |

[1] Average selling price is based on USDA published weekly prices found in:
http://151.121.3.194:8080/dashboard/?toolbar=0&d=390.

Exhibit B

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**

**Del Monte Actual Sales by Customer[1]**

| Customer ID | Round | Roma | Grape | Cherry | Handling | Total |
|---|---|---|---|---|---|---|
| MARANO | $   418,640 | $   3,040 | $   35,200 | $   12,860 | $   178,228 | $   647,968 |
| FPNASH | 413,398 | 17,600 | 16,128 | 18,492 | 168,646 | 634,263 |
| GRANTC | 294,504 | 114,000 | 20,900 | | 169,673 | 599,077 |
| SIXKNO | 246,880 | 40,635 | 4,608 | 4,608 | 74,880 | 371,611 |
| OKUN | 189,120 | 35,200 | 33,120 | 7,424 | 102,336 | 367,200 |
| CUSTPA | 137,600 | 131,232 | | | 91,580 | 360,412 |
| PAPPWA | 138,800 | 68,000 | 30,020 | 25,310 | 75,627 | 337,757 |
| AONEA | 222,000 | | 8,640 | | 52,884 | 283,524 |
| NOVAPR | 165,040 | 6,400 | | | 81,276 | 252,716 |
| STAPRO | 172,160 | 7,200 | 22,000 | | 50,037 | 251,397 |
| HEARNE | 145,511 | 7,520 | 28,852 | | 48,916 | 230,799 |
| BOSTOM | 138,400 | | 38,000 | | 41,184 | 217,584 |
| WUHLSL | 32,000 | 18,720 | 131,900 | | 34,944 | 217,564 |
| FPHART | 143,360 | 5,440 | 23,024 | 940 | 37,319 | 210,083 |
| SANBRO | 172,320 | | | | 37,284 | 209,604 |
| DMFPMB | 136,702 | 8,248 | 4,982 | 1,550 | 39,431 | 190,913 |
| TOMGMT | 144,160 | | | | 46,644 | 190,804 |
| CAPNOR | 80,800 | 10,560 | 38,760 | 7,894 | 48,208 | 186,222 |
| EFOODS | 147,200 | | | | 39,000 | 186,200 |
| SPVALS | 58,320 | 25,680 | 28,896 | | 68,890 | 181,786 |
| THOCOL | 112,000 | 34,080 | | | 34,008 | 180,088 |
| 7SEAFR | 41,600 | | 118,000 | | 19,110 | 178,710 |
| HEARN | 72,720 | 26,769 | 28,338 | 1,280 | 30,878 | 159,985 |
| ARMATA | 126,240 | | | | 30,732 | 156,972 |
| BENNYC | | | 130,000 | | 15,600 | 145,600 |
| CIMINO | 41,185 | 18,693 | 50,256 | 2,399 | 31,713 | 144,245 |
| BOTSIS | 95,476 | | 10,800 | | 29,952 | 136,228 |
| COTVEG | 98,880 | | 11,520 | | 25,178 | 135,578 |
| RAMPRO | 73,120 | | 33,552 | | 27,144 | 133,816 |
| QUALFP | 58,080 | 24,160 | 28,700 | | 22,464 | 133,404 |
| AVBALD | 21,680 | 24,960 | 41,760 | 16,188 | 25,276 | 129,864 |
| CCPROD | 75,040 | | 34,000 | | 19,734 | 128,774 |
| WEISBS | 13,920 | 7,040 | 79,280 | 3,840 | 23,743 | 127,823 |
| BEAJEP | 92,250 | 3,600 | 2,016 | 1,092 | 28,410 | 127,368 |
| PACPRO | 95,520 | | | | 24,648 | 120,168 |
| FIJO&S | 86,400 | 3,840 | 3,168 | | 23,681 | 117,089 |
| PROBRS | 87,360 | | | | 24,960 | 112,320 |
| CHENAI | 90,560 | | | | 21,684 | 112,244 |
| AMPROD | 84,000 | | | | 28,080 | 112,080 |
| PROCAB | 80,800 | | | | 31,044 | 111,844 |
| SYSAME | 83,312 | | | | 28,080 | 111,392 |
| PCPALM | 46,880 | 42,400 | | | 20,748 | 110,028 |
| ALEXAP | 80,760 | 2,232 | | | 13,416 | 96,408 |
| VIRGPR | 55,360 | 19,200 | | | 21,528 | 96,088 |
| NARDEL | 50,848 | 13,360 | 2,592 | 621 | 23,306 | 90,727 |
| MULLER | 64,800 | 4,480 | | | 19,812 | 89,092 |

Exhibit B

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**

**Del Monte Actual Sales by Customer[1]**

| Customer ID | Round | Roma | Grape | Cherry | Handling | Total |
|---|---|---|---|---|---|---|
| GGPHIL | 60,544 | | 1,469 | (250) | 19,469 | 81,232 |
| GROUPA | 64,909 | | | | 15,444 | 80,353 |
| CONDAK | 43,040 | | 16,200 | 1,536 | 13,112 | 73,888 |
| JENKIN | 49,680 | | | | 24,180 | 73,860 |
| CLASSJ | 26,160 | 25,600 | | | 21,684 | 73,444 |
| TAYLBP | 46,400 | | | | 21,840 | 68,240 |
| SCBRSA | 32,800 | 6,400 | | | 28,080 | 67,280 |
| EUBANK | 11,200 | 34,400 | 12,000 | | 9,672 | 67,272 |
| ROSESC | 26,480 | 18,400 | 1,728 | 1,920 | 16,130 | 64,658 |
| THRUWP | 30,680 | 19,680 | 350 | 200 | 11,310 | 62,220 |
| SCOTTS | 39,040 | 6,400 | 4,800 | | 9,516 | 59,756 |
| DARRNY | 43,200 | | | | 15,600 | 58,800 |
| GEOTOM | 46,640 | | | | 9,204 | 55,844 |
| M&MHAR | 40,000 | | | | 15,600 | 55,600 |
| RIVCIT | 35,894 | | | | 18,691 | 54,585 |
| KALECK | 23,360 | 5,983 | 4,032 | 512 | 19,894 | 53,781 |
| SEMISA | 5,120 | 8,080 | 24,528 | 4,308 | 11,021 | 53,057 |
| BERNOG | 23,360 | | 18,400 | 1,280 | 7,894 | 50,934 |
| PROVIV | 40,320 | 3,520 | | | 6,240 | 50,080 |
| TCBRK | 43,704 | | | | 6,084 | 49,788 |
| COURCH | 38,880 | | | | 6,240 | 45,120 |
| STARP | 32,000 | | | | 9,360 | 41,360 |
| DIXCHA | 19,988 | 1,760 | 12,960 | | 6,178 | 40,886 |
| PROPAK | 20,800 | 2,640 | 5,741 | 512 | 10,179 | 39,872 |
| FSHPTO | 30,406 | | | | 9,204 | 39,610 |
| SEVERT | 21,840 | 8,160 | | | 9,360 | 39,360 |
| LIPREP | 32,000 | | | | 6,240 | 38,240 |
| KB&RTC | 30,400 | | | | 6,240 | 36,640 |
| AMBROG | | 7,200 | 9,504 | 9,984 | 9,204 | 35,892 |
| FRESNY | 7,920 | 5,893 | 6,716 | 768 | 14,432 | 35,729 |
| SUMHAR | 19,520 | | 9,800 | | 6,045 | 35,365 |
| NETOMA | 29,120 | | | | 5,772 | 34,892 |
| THOFRT | 23,760 | | | | 9,204 | 32,964 |
| MEXFLO | 23,200 | | | | 9,360 | 32,560 |
| MUA&RP | 1,640 | 14,753 | | | 15,623 | 32,016 |
| WESNYP | 21,080 | | 3,600 | 84 | 6,232 | 30,996 |
| LEDLOW | 17,044 | 2,560 | 1,664 | 1,792 | 7,724 | 30,784 |
| SHETOM | 1,600 | 3,920 | 19,840 | | 4,883 | 30,243 |
| PARALA | 4,480 | 240 | 17,344 | 1,888 | 6,115 | 30,067 |
| SCHWAR | 1,280 | | 23,904 | | 4,805 | 29,989 |
| FOUR | 12,800 | | 8,800 | | 7,800 | 29,400 |
| CSWHOL | | 22,640 | | | 6,084 | 28,724 |
| HOUAVO | 8,953 | 240 | | | 18,180 | 27,372 |
| BEUVAI | 20,800 | | | | 6,240 | 27,040 |
| OAKESF | 20,496 | | | | 6,240 | 26,736 |
| SUNCOM | 22,400 | | | | 3,120 | 25,520 |

Exhibit B

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**

**Del Monte Actual Sales by Customer**[1]

| Customer ID | Round | Roma | Grape | Cherry | Handling | Total |
|---|---|---|---|---|---|---|
| PCARIS | 17,467 | 736 | | | 7,028 | 25,231 |
| NACHOP | 12,640 | | | | 12,324 | 24,964 |
| CSCHES | | 19,760 | | | 5,148 | 24,908 |
| COOSEM | 21,120 | | | | 3,120 | 24,240 |
| FRESHG | | | 20,000 | | 3,900 | 23,900 |
| ROBSTL | 20,960 | | | | 2,496 | 23,456 |
| MAFRPR | 560 | 18,400 | | | 3,978 | 22,938 |
| BLUERF | 14,000 | 3,840 | | | 4,680 | 22,520 |
| RSHANL | 11,360 | | 7,000 | | 3,393 | 21,753 |
| CEFALU | 18,240 | | | | 2,964 | 21,204 |
| ROBTAM | 16,000 | | | | 3,120 | 19,120 |
| HEISTL | 15,200 | | | | 2,652 | 17,852 |
| PANHEL | 14,400 | | | | 3,120 | 17,520 |
| BUSHBR | 11,600 | | | | 5,148 | 16,748 |
| BROMUR | 12,800 | | | | 3,120 | 15,920 |
| LESALI | | | 11,500 | | 3,900 | 15,400 |
| MUBENC | 3,360 | 4,800 | 2,700 | | 2,925 | 13,785 |
| EASTCF | | 10,400 | | | 3,120 | 13,520 |
| PRIMOA | 8,096 | | | | 5,304 | 13,400 |
| PCCANT | 1,785 | 2,100 | 600 | | 8,270 | 12,755 |
| INTCPR | 8,000 | | | | 3,120 | 11,120 |
| SALINS | 7,680 | 1,840 | | | 1,560 | 11,080 |
| GENCAN | 5,160 | | 1,584 | | 3,994 | 10,738 |
| SANINT | 3,920 | 3,084 | 864 | | 2,153 | 10,021 |
| SYFPDE | 6,400 | | | | 3,120 | 9,520 |
| FRPDEN | 5,968 | | | | 3,120 | 9,088 |
| MVSILW | 2,320 | 1,440 | 1,872 | | 1,654 | 7,286 |
| KATPRO | | | 3,100 | | 3,900 | 7,000 |
| CAITOF | | | 6,048 | | 842 | 6,890 |
| CAITEF | | | 6,048 | | 842 | 6,890 |
| MATNEW | | | | 5,376 | 1,498 | 6,874 |
| PCGEOR | 1,120 | 3,124 | | | 1,404 | 5,648 |
| WRIGHT | 4,480 | | | | 624 | 5,104 |
| GARDEN | 1,120 | | 2,880 | | 718 | 4,718 |
| MERDIS | | | 2,650 | | 562 | 3,211 |
| DIMRIV | 1,600 | | | | 312 | 1,912 |
| DANDRE | | 1,440 | | | 468 | 1,908 |
| CAITON | | | - | | 842 | 842 |
| PEXCO | | 560 | | | 156 | 716 |
| VEGGIF | 480 | | | | 156 | 636 |
| **Total Revenue** | **$ 6,868,478** | **$ 994,281** | **$ 1,309,238** | **$ 134,408** | **$ 2,763,398** | **$ 12,069,803** |

[1] Source: Del Monte Sales Report by Customer from April 1, 2014 through July 31, 2014 (RP731).

**Exhibit C**

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**
**Credit Effective Dates are from 04/30/2014 through 08/05/2014**
Source:  Credit Report (RP740)

| | Quantity | Value | % of Total |
|---|---|---|---|
| QUA-Checkerboard | 3,120 | $ 10,960 | 0.64% |
| QUA-Decay | 256 | 1,106 | 0.06% |
| ENTRY ERROR | 115,084 | 340,500 | 19.86% |
| QUA-Fails Grade | 8,256 | 30,542 | 1.78% |
| MPA-Market Adjustment | 9,440 | 15,520 | 0.91% |
| ORDERED IN ERROR | 64 | 448 | 0.03% |
| QUA-Over Ripe | 160 | 712 | 0.04% |
| PRICE ADJUSTMENT | 116,026 | 225,419 | 13.15% |
| BKR-Quality | 320 | 1,168 | 0.07% |
| QUALITY | 210,053 | 1,059,697 | 61.80% |
| OPS-Short Ship | 305 | 786 | 0.05% |
| SPECIFICATION | 6,258 | 15,107 | 0.88% |
| SHORT | 353 | 905 | 0.05% |
| QUA-Shriveling | 432 | 1,296 | 0.08% |
| INP-USDA Inspection | 4,488 | 738 | 0.04% |
| WRONG ITEM SHIPPED | 260 | 1,756 | 0.10% |
| PRI-Wrong Price | 5,920 | 8,196 | 0.48% |
| | **480,795** | **$ 1,714,856** | **100.00%** |
| **Credits believed to be due to TSS actions** | | 1,059,697 [(1)] | 61.80% |
| Credits believed not due to TSS actions | | $ 655,159 | |
| Times: Factor for But-For Credits | | 1.98 | |
| **But-For Credits** | | **$ 1,300,232** | |

[(1)] Based upon discussion with Alberto, many credits reflected as "not believed to be due
to TSS actions, were in fact due to the alleged actions of TSS; however, in order to be
conservative in favor of the Defendant, only those specifically referenced as "QUALITY"
related credits are considered to be related to TSS.

**Calculation of But-for Credits**

| | But-For Factor | Credits Per Box |
|---|---|---|
| Actual Boxes sold | 1,431,875 | $ 0.46 |
| But-for Boxes sold | 2,841,707 | $ 0.46 |
| **But-for Boxes to Actual** | **1.98** | |

**Exhibit D**

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**

**Del Monte Actual and But-For Costs**[1]

| Description | Actual Costs | Forecast Factor | But-For Costs |
|---|---|---|---|
| Cultivation | 8,529,056 | 100% | 8,562,653 |
| Harvesting: | | | |
| Labor | 3,140,776 | | 3,118,317 |
| Other | 230,769 | 100% | 230,769 |
| Packing | 4,542,304 | 198% | 9,001,916 |
| Administrative Costs | $ 3,325,974 | 100% | $ 3,340,372 |
| | $ 19,768,879 | | $ 24,254,028 |

**Factor Calculation of Forecasted Packing to Actual Packing**

| Description | Pounds |
|---|---|
| Forecasted Packing (Lbs.) | 71,042,672 |
| Actual Packing (Lbs.) | 35,847,633 |
| Forecasted Packing to Actual Packing Factor | 198% |
| | |

**Calculation of Forecasted Harvesting Labor**

| | Round | Roma | Grape | Cherry | Total |
|---|---|---|---|---|---|
| Harvesting Labor (Actual) | $ 1,540,104 | $ 612,206 | $ 888,151 | $ 100,315 | $ 3,140,776 |
| Gross Forecasted Pounds | 59,607,617 | 14,806,288 | 3,735,569 | 786,829 | |
| ÷ Pounds per Bin | ÷ 1,000 | ÷ 1,000 | ÷ 575 | ÷ 575 | |
| | 59,608 | 14,806 | 6,497 | 1,368 | |
| x  Amount per Bin | $ 30.84 | $ 34.05 | $ 105.37 | $ 66.73 | |
| Forecasted Labor | $ 1,838,299 | $ 504,154 | $ 684,551 | $ 91,313 | $ 3,118,317 |

**Exhibit E**

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**
**Summary of Unpaid TSS Invoices Included in Spring Season Costs**

| Description | Amounts |
|---|---|
| Manually Accrued Invoices | $ 2,467,156 |
| Invoices Recorded via A/P | 1,674,585 |
| | $ 4,141,741 [1] |

[1] Source:  G/L analysis and discussions with Alberto.

**Exhibit F**

### DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.
### Summary of Hartley Report

| Variety | Average Pounds per Plant | Plants Per Acre | Total Acres | Total Pounds |
|---------|--------------------------|-----------------|-------------|--------------|
| Round   | 8.34 | 3,630 | 1,042 | 31,556,106 |
| Roma    | 9.20 | 3,630 | 198   | 6,613,248  |
| Grape   | 4.88 | 3,630 | 97    | 1,719,899  |
| Cherry  | 6.13 | 3,630 | 19    | 428,000    |
| **Total** | **7.73** |  | **1,357** | **40,317,252** |

### DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.
### Florida Statutory Prejudgment Interest Calculation
### Net Losses

| Week | Actual Sales | Percentage of Actual Sales | Net Losses Per Week | Cumulative Balance | Date Due | # Days | FL Statutory Daily Interest Rate | Prejudgment Interest |
|---|---|---|---|---|---|---|---|---|
| 04/20/14 | 878,558 | 7.28% | 630,407 | 630,407 | 05/20/14 | 7 | 0.000130137 | $ 574 |
| 04/27/14 | 1,112,393 | 9.22% | 798,195 | 1,428,602 | 05/27/14 | 7 | 0.000130137 | 1,301 |
| 05/04/14 | 844,151 | 6.99% | 605,718 | 2,034,320 | 06/03/14 | 7 | 0.000130137 | 1,853 |
| 05/11/14 | 1,390,686 | 11.52% | 997,883 | 3,032,203 | 06/10/14 | 7 | 0.000130137 | 2,762 |
| 05/18/14 | 1,413,758 | 11.71% | 1,014,438 | 4,046,641 | 06/17/14 | 7 | 0.000130137 | 3,686 |
| 05/25/14 | 2,524,792 | 20.92% | 1,811,657 | 5,858,298 | 06/24/14 | 8 | 0.000130137 | 6,099 |
| 06/02/14 | 2,088,739 | 17.31% | 1,498,769 | 7,357,067 | 07/02/14 | 6 | 0.000130137 | 5,745 |
| 06/08/14 | 1,358,092 | 11.25% | 974,495 | 8,331,562 | 07/08/14 | 7 | 0.000130137 | 7,590 |
| 06/15/14 | 278,731 | 2.31% | 200,003 | 8,531,565 | 07/15/14 | 8 | 0.000130137 | 8,882 |
| 06/23/14 | 162,552 | 1.35% | 116,639 | 8,648,203 | 07/23/14 | 7 | 0.000130137 | 7,878 |
| 06/30/14 | 17,352 | 0.14% | 12,451 | 8,660,654 | 07/30/14 | 232 | 0.000130137 | 261,481 |
| Total | $ 12,069,803 | 100% | $ 8,660,654 | | 3/19/2015 | 303 | | $ 307,852 [1] |
| | | | | | | | Daily Interest | $ 1,127 |

[1] Pre-judgment interest calculation contains a credit approximately $4.1 million of unpaid TSS invoices included in Costs necessary to generate net tomato revenues Del Monte is holding.

**Exhibit H**

## DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.
### Excess Expenses Incurred by Del Monte

|  | But-For Amount | Actual Amount | Excess Percentage % |
|---|---|---|---|
| Gross Tomato Revenues | 28,942,724 | 12,069,803 | 58% |

|  |  | Expenses | Excess % | | Excess Expenses Incurred | |
|---|---|---|---|---|---|---|
| Cultivation - Actual | | 8,529,056 | 58% | | 4,972,237 | |
| | | | | | | |
| Harvesting Costs - Actual | | | | $ | 3,371,545 | |
| Less: 42% **But-For** Harvesting | | 3,349,086 | 42% | | (1,396,649) | |
| | | | | $ | 1,974,896 | |
| | | | | | | |
| Packing - Actual | | 4,542,304 | 0% | | - | **Note 1** |
| Administrative Costs - Actual | $ | 3,325,974 | 58% | $ | 1,938,964 | |
| | | | | | | |
| **Excess Expenses Incurred by Del Monte** | | | | $ | **8,886,098** | |

**Note 1-** According to Mr. Calderon, sufficient packers were supplied to handle harvest forecasted yields.  Therefore, actual packing costs represent but-for packing costs.

Exhibit I

**DEL MONTE FRESH PRODUCTION, INC. v TS STAFFING SERVICES, INC.**
**Florida Statutory Prejudgment Interest Calculation**
**Excess Expense Incurred**

| Week of | Actual Sales | Percentage of Actual Sales | Excess Expense Per Week | Cumulative Balance | Date Due | # Days | FL Statutory Daily Interest Rate | Prejudgment Interest |
|---|---|---|---|---|---|---|---|---|
| 04/20/14 | 878,558 | 7.28% | 422,476 | 422,476 | 05/20/14 | 7 | 0.000130137 | $ 385 |
| 04/27/14 | 1,112,393 | 9.22% | 534,921 | 957,397 | 05/27/14 | 7 | 0.000130137 | 872 |
| 05/04/14 | 844,151 | 6.99% | 405,930 | 1,363,327 | 06/03/14 | 7 | 0.000130137 | 1,242 |
| 05/11/14 | 1,390,686 | 11.52% | 668,745 | 2,032,071 | 06/10/14 | 7 | 0.000130137 | 1,851 |
| 05/18/14 | 1,413,758 | 11.71% | 679,839 | 2,711,911 | 06/17/14 | 7 | 0.000130137 | 2,470 |
| 05/25/14 | 2,524,792 | 20.92% | 1,214,106 | 3,926,017 | 06/24/14 | 8 | 0.000130137 | 4,087 |
| 06/02/14 | 2,088,739 | 17.31% | 1,004,420 | 4,930,437 | 07/02/14 | 6 | 0.000130137 | 3,850 |
| 06/08/14 | 1,358,092 | 11.25% | 653,071 | 5,583,508 | 07/08/14 | 7 | 0.000130137 | 5,086 |
| 06/15/14 | 278,731 | 2.31% | 134,035 | 5,717,543 | 07/15/14 | 8 | 0.000130137 | 5,953 |
| 06/23/14 | 162,552 | 1.35% | 78,167 | 5,795,710 | 07/23/14 | 7 | 0.000130137 | 5,280 |
| 06/30/14 | 17,352 | 0.14% | 8,344 | 5,804,054 | 07/30/14 | 232 | 0.000130137 | 175,235 |
| **Total** | **$ 12,069,803** | **100%** | **$ 5,804,054** | | **3/19/2015** | **303** | | **$ 206,311** [1] |
| | | | | | | | *Daily Interest* | *$ 755* |

[1] Pre-judgment interest calculation contains a credit approximately $4.1 million of unpaid TSS invoices included in amounts expended Del Monte is holding.